**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SCOTT MILLER, on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | No. 14-cv-04076-ES-MAH |
| SAMSUNG ELECTRONICS AMERICA, Inc., | |
| Defendant. | |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
SAMSUNG'S MOTION TO DISMISS THE FIRST AMENDED CLASS
ACTION COMPLAINT**

---

Michael J. DeBenedictis, Esq.
**DeBenedictis & DeBenedictis LLC**
125 Kings Highway West
Haddonfield, NJ 08033
Tel: (856) 795-2101
mjd@debenedictislaw.com

(additional counsel listed
on the signature page)

**TABLE OF CONTENTS**

**I. .........The Complaint Alleges that the Chromebook Does Not Have a USB 3.0 "SuperSpeed" Port**.......................................................................................... 1

**II. ....... The Court Should Not Dismiss Plaintiff's Claims Under the New Jersey Consumer Protection Laws**........................................................................... 6

    A.   Plaintiff Has Article III Standing to Assert His Claims .............................6

    B.   Choice of Law Principles Require that New Jersey Law Be Applied. ........7

    C.   At A Minimum, Samsung's Arguments Against New Jersey Choice Of Law Should Be Deferred Until Class Certification ...........................................9

    D.   Plaintiff Has Properly Pled His Claims For Relief under New Jersey Law ……………………………………………………………………………10

**III.  The Court Should Not Dismiss Plaintiff's Claims Under Florida Consumer Protection Laws** ....................................................................................... 13

    A.   Plaintiff States a Claim Under the Florida Deceptive and Unfair Trade Practices Act. ................................................................................... 13

    B.   Plaintiff States a Claim Under Florida's Misleading Advertising Statute. 15

**IV. ..........The Court Should Not Dismiss Plaintiff's Common Law Fraud Claims** ....................................................................................................... 15

    A.   Plaintiff Has Properly Pled Fraud in the Inducement.............................. 15

    B.   Plaintiff Pleaded Fraud With Sufficient Particularity .............................. 18

**V.....The Amended Complaint States a Claim for Breach of Implied Warranties Under Both New Jersey and Florida Law** .......................................................... 19

    A.   The Amended Complaint States a Claim for Breach of Implied Warranty of Merchantability. ................................................................................... 19

    B.   Florida's Privity of Contract Requirement is Met ................................... 22

    C.   Samsung Did Not Effectively Disclaim the Warranty For Particular Purpose.................................................................................................... 22

**VI...The Complaint States a Claim for Breach of Express Warranty 12A:2-131, and in the alternative, Fla. Stat. § 672.313(b))** ..................................................... 23

    A.   Samsung Did Not Effectively Disclaim its Express Warranties Regarding its USB 3.0 Port .................................................................................... 24

    B.   Plaintiff Was Not Required to Provide Samsung Notice Prior to Filing Suit……… ................................................................................... 25

**VII. Plaintiff is Entitled to Equitable Relief** ....................................................... **25**

    A.   Plaintiff *Ha*s Sufficiently Alleged He Is Under Threat of Suffering Injuries from Samsung's Conduct .............................................................................. 25

    B.   Alternatively, the Court Should Sever Plaintiff's Claims for Injunctive Relief ................................................................................................................ 28

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Peter Tramontin Motor Sales, Inc.*, 126 A.2d 358 (N.J. Sup. Ct. 1956) 21

*American Capital Acquisitions Partners LLC v. Fortigent LLC*, Case No. 14-1926, 2014 WL 6981968 (3d Cir., Dec. 11, 2014) .......................................... 29

*Arcand v. Brother Intern. Corp.*, 673 F.Supp.2d 282 (D.N.J. 2009)..................... 28

*Aprigliano v. Am. Honda Motor Co., Inc.,* 979 F. Supp. 2d 1331 (S.D. Fla. 2013) ...................................................................................................... 18

*Arlandson v. Hartz Mountain Corp.*, 792 F.Supp.2d 691 (D.N.J. 2011) .............. 24

*Bland v. Freightliner,* 206 F. Supp. 2d 1202 (M.D. Fla. 2002) ........................... 23

*Bosland v. Warnock Dodge, Inc.*, 933 A.2d 942 (App. Div. 2007)....................... 13

*Burns v. Winnebago Industries, Inc.*, No. 8:13–cv–1427–T–24 MAP, 2013 WL 4437246 (M.D. Fla. Aug. 16, 2013).......................................................... 17, 18

*Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007) ................ 29

*Clark v. McDonald's Corp.*, 213 F.R.D. 198 (D.N.J. 2003)................................... 9

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565 (11th Cir. 2009)………………………………………………………………………...8

*Coyle v. Hornell Brewing Co.,* Case No. CIV.08-02797 (JBS), 2010 WL 2539386 (D.N.J., June 15, 2010) ........................................................................ 25

*Dicuio v. Brother Intern. Corp.*, Case No. 11–1447, 2012 WL 3278917(D.N.J. Aug. 9, 2012) ………………………………………………………………...28

*Dzielak v. Whirlpool Corp.*, Case No. CIV. 2:12-0089 KM, 2014 WL 2758746 (D.N.J., June 16, 2014) ........................................................................... 22

*Federal Ins. Co. v. Lazzara Yachts of North America, Inc.*, Case No. 8:09CV607-T-27MAP, 2010 WL 1223126 (M.D. Fla., Mar. 25, 2010)………......………26

*Gladden v. Cadillac Motor Car Div., General Motors Corp.*, 83 N.J. 320 (1980)25

*Goldstein v. Home Depot U.S.A., Inc.*, 609 F.Supp.2d 1340 (N.D.Ga. 2009)………………………………………………………………27

*Graphic Services, Inc. v. Graphic Innovators, Inc.*, No. 13-cv-6482, 2014 WL 1818235 (D.N.J. May 8, 2014).................................................................... 16

*Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275 (D.N.J. 2011) . 21, 22

*Hammer v. Vital Pharmaceuticals*, Case No. 11-4124 MAS, 2013 WL 5470007 (D.N.J., Sept. 30, 2013).................................................................................. 26

*Harper v. LG Elecs. United States, Inc.*, 595 F.Supp.2d 486 (D.N.J. 2009)......... 10

*HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238 (Fla.1996)...... 16

*Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846,2011 WL 2976839 (D.N.J. July 21, 2011) ................................................................................ 22

*In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, No. CIV. 12-169, 2013 WL 5503308 (D.N.J. Oct. 2, 2013) ..................................... 6

*In re Gerber Probiotic Sales Practices Litig.*, No. CIV.A. 12-835 JLL, 2014 WL 5092920 (D.N.J. Oct. 10, 2014) .................................................................. 6, 7

*In re Hypodermic Products Antitrust Litig.*, Civ. No. 05–1602, 2007 WL 1959225 (D.N.J. June 29, 2007) ................................................................................ 9

*In re K–Dur Antitrust Litig.*, 338 F.Supp.2d 517 (D.N.J. 2004)........................... 10

*In re MyFord Touch Consumer Litig.,* No. C-13-3072 EMC, 2014 WL 2451291 (N.D. Cal. May 30, 2014) ..................................................................... 17, 18

*Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, No. ATL-L-3015-03, 2005 WL 2205341 (N.J. Super. Ct. Law Div. July 29, 2005)…………………………………………………………………………..8

*Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F.Supp.2d 1356 (S.D. Fla. 2010)……………………………………………………………………..…28

*Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487 (1941)………………...7

*Kuenzig v. Kraft Foods, Inc.*, No. 8: 11-CV-838-T-24, 2011 WL 4031141 (M.D. Fla. Sept. 12,2011) ..................................................................................... 15

*L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561 (7th Cir. 1993)... 24, 25

*Lee v. Am. Nat. Ins. Co.,* 260 F.3d 997 (9th Cir. 2001)........................................ 29

*Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F.Supp.2d 529 (D.N.J. 2011) ...............................................................................20, 21, 22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........................................... 6

*Machlan v. Proctor & Gamble, et al,* Case No. 14-cv-01982-JD (N.D. Cal. Jan. 7 2015) ......................................................................................................... 29

*Maniscalo v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir. 2013)…….7

*McNair v. Synapse Group Inc.*, 672 F.3d 213 (3d Cir. 2012)................................27

*Merl v. Warner Bros. Entm't,* 2012 WL 366927 (M.D. Fla.
   Feb. 3, 2012) ………………………………………………………………15

*Morris v. BMW of N. Am., LLC*, No. 13-4980, 2014 WL 793550 (D.N.J. Feb. 26,
   2014) ...................................................................................... 19

*PFM Air, Inc. v. Dr.Ing.hc.F.Porsche A.G.*, No. 8:08-CV-392-T-17MAP, 2011 WL
   254724 (M.D. Fla. Jan. 26, 2011)................................... 16

*P.V. v. Camp Jaycee*, 962 A.2d 453 (2008)………………………………………..7

*Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496 (D.N.J. 2009) ......................... 9

*Salsitz v. Peltz*, 210 F.R.D. 95 (S.D.N.Y. 2002) ...................................... 9

*Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.,* 890 F.2d 108 (9th Cir.
   1989) ................................................................................... 25

*Smith v. Mellon Bank*, 957 F.2d 856 (11th Cir. 1992)…………………………8

*Snyder v. Farnam Cos., Inc.*, 792 F.Supp.2d 712 (D.N.J. 2011)………………7, 9

*State Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC*, 946 So.2d 1253
   (Fla. 1st DCA 2007)……………………………………………………….8

*State Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d
   592 (Fla. Dist. Ct. App. 2004)……………………………………………....8

*Strzakowlski v. General Motors Corp.,* Case No. 04–4740(JHR), 2005 WL
   2001912 (D.N.J. Nov. 18, 2011)................................. 26

*Student Public Interest Research Group of New Jersey, Inc. v. Georgia-Pacific
   Corp.*, 615 F.Supp. 1414 (D.N.J. 1985) ....................... 26

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ......................... 26

*Tiara Condo Association v. Marsh & McLennan Companies, Inc.*, 110 So.3d 399
   (Fla. 2013) ....................................................................... 17, 18

*Todd Const., L.P. v. United States*, 656 F.3d 1306 (Fed. Cir. 2011) .................... 10

*Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375 (Fed. Cir.
   2009) ................................................................................. 10

*United States v. SCRAP*, 412 U.S. 669 (1973).................................. 26

*Watkins v. DineEquity, Inc*., No. 13-1359, 2014 WL 5786603 (3d Cir. Nov. 7,
   2014) ............................................................................. 11, 12

*Zabriskie Chevrolet, Inc. v. Smith*, 240 A.2d 195, 204 (N.J. Sup. Ct. 1968) ........ 21

**Statutes and Other Authorities**

N.J. Stat. Ann. § 12A:2–131 ................................................................ 24
N.J. Stat. Ann. § 12A:2-313 ................................................................ 24
N.J. Stat. Ann. §  12A:2-314 ............................................................... 20
N.J. Stat. Ann. §  56:8-8 ..................................................................... 28
Fla. Stat. § 501.202(2)…………………………………………….....29
Fl. Stat. § 672.314 ............................................................................. 20
Fla. Stat. § 672.313 ........................................................................... 24
Fla. Stat. § 817.41 ............................................................................. 19
Black's Law Dictionary 1158 (5th ed. 1979) ..................................... 10

**INTRODUCTION**

After repeatedly telling consumers that its Chromebook included a USB 3.0 "SuperSpeed" port, Samsung sold consumers a laptop with a USB port that operates at only about 1.6% of the 5 Gb/s speed required by the USB 3.0 Specification. Now, Samsung takes the position that consumers should have *no* recourse for Samsung's deceptive actions; Samsung asks the Court to dismiss each and every claim that Plaintiff has brought.

The Court should decline to do so. As discussed below, even if one accepts Samsung's strained interpretation of the USB 3.0 Specification, the Chromebook's USB port is over *25 times* slower than the rate that Samsung *admits* is a realistic rate of operation. Indeed, the Chromebook's USB port is so slow that its rate of operation is easily surpassed by USB *2.0* ports that were sold with computers over a decade ago.

The Court should also reject Samsung's argument that Plaintiff cannot seek relief under New Jersey law. Samsung's argument relies entirely on an outdated Eleventh Circuit opinion that has been contradicted by more recent cases in the Eleventh Circuit, Florida and this Court. Under the controlling authority, the Florida consumer protection statute does not require reliance, and therefore there is no "actual conflict" between Florida and New Jersey law.

**ARGUMENT**

**I.   The Complaint Alleges that the Chromebook Does Not Have a USB 3.0 "SuperSpeed" Port.**

When Samsung originally moved to dismiss Plaintiff's claims, it complained that Plaintiff failed to adequately test the speed of the Chromebook's purported USB 3.0 "SuperSpeed" port. In particular, Samsung argued that Plaintiff's original complaint did not state (i) "what device he connected to the USB 3.0 port" (Dkt. No. 8 at 7); (ii) "whether he was running any other

1

programs while transferring data" (*Id.*); and (iii) "any other details surrounding his use of the USB 3.0 port that could affect the USB 3.0 port's or his Chromebook's data transfer speeds." (*Id.*)

Plaintiff amended the Complaint to address each of these issues. The Amended Complaint clarifies that Plaintiff's investigator performed ***multiple*** tests on the Chromebook's supposed USB 3.0 port using two different devices—an Imation Pocket Pro flash drive and a Patriot 32GB Supersonic Rage USB 3.0 Flash Drive. (FAC at ¶¶ 44-51.) The investigator transferred a 32,000 Megabit file from the Chromebook's internal hard drive to each of these devices. (*Id.*) The Chromebook failed both tests. The transfer to the Imation drive was 68.1 Megabits per second, and the transfer to the Patriot drive was 79.2 Megabits per second—far slower than the 5 Gigabits per second required by the USB 3.0 Specification. (*Id.*) Indeed, the USB 3.0 Specification requires speeds that are over ***sixty times*** faster than those of the Chromebook's USB port.

Further, to ensure that the slow transfer speeds were not the fault of the flash drives, the investigator transferred the exact same file from the USB ***2.0*** port of his 2006 Mac Pro. (*Id.* at ¶ 47.) The transfer from the Mac Pro occurred at a rate of 301.9 Megabits/s. (*Id.*) Addressing Samsung's original concerns, the Amended Complaint confirms as follows:

> All tests described above were performed on the Chromebook as it existed after being taken out of the box. No other applications had been installed on the Chromebook when the tests were performed. No other hardware devices were connected to the Chromebook. Nor did the investigator open any additional applications before performing the tests. Accordingly, the investigator's tests show how the Chromebook's USB 3.0 port operates in the best-case scenario under normal use.

(FAC at ¶ 51.)

After Plaintiff amended the Complaint to address *all* of Samsung's concerns, Samsung raises a new grievance: that "Plaintiff provides no facts from which to infer that the Chromebook's USB 3.0 port failed or would fail the Implementers Forum's testing protocol, which is the only means by which a part can be deemed 'non-compliant' with the USB 3.0 Specification." (Br. at 6.)

As an initial matter, Samsung provides no information regarding what, exactly, the Implementers Forum tests, or even whether there is a test for the speed of the USB port. Further, there is no indication that the Chromebook's USB port passed the Implementers Forum's test. As discussed in detail below, the Chromebook has miserably failed *every* speed test in the record before the Court, including a speed test conducted by a respected technology journalist. Accordingly, if the Implementers Forum does, in fact, test the speed of the port, then it seems quite unlikely that the Chromebook would have passed the test, unless Samsung provided a different port for testing than it ultimately provided to consumers. These issues, however, are complicated and speculative, and are not properly considered at this early stage of the case.

More importantly, Samsung's focus on the Implementers Forum's testing protocol ignores the real issue, which is whether Samsung's actions were likely to mislead reasonable consumers. The First Amended Complaint supports an inference that consumers were misled by Samsung's repeated representations that the Chromebook had a USB 3.0 "Super-speed" port, because (i) the USB port simply cannot reach the required transfer speeds, even when used out of the box and in an ideal testing environment, with no other software applications running, and with no other hardware devices being connected to it (*see* FAC ¶¶ 44-51); and (ii) the Chromebook's supposed USB *3.0* port is much slower than USB *2.0* ports that were designed

*3*

many years ago. (*Id.* ¶¶ 41, 47.) These facts are alleged in the First Amended Complaint, and are supported by testing performed by Plaintiff, his investigator, and a third party technology journalist.

Samsung also fails to address the fact that Plaintiff and his investigator were not the only ones who determined that the Chromebook cannot transfer files at USB 3.0 speeds. The First Amended Complaint states that Anand Lal Shimpi, a respected technology journalist, wrote an October 31, 2012 review of the Chromebook, stating as follows:

> The USB 3.0 port is a bit useless on the new Chromebook. I dusted off my trusty Zalman SLC NAND USB 3.0 drive, capable of delivering more than 80MB/s and copied a 2.8GB file to the internal NAND. I timed the process and came away with an average transfer rate of around 12.7MB/s - well within the realm of USB *2.0* performance. Given the Exynos 5 Dual SoC features an integrated USB 3.0 controller, it's possible Samsung just wanted to take advantage of the feature and perhaps test its implementation. It's a nice checkbox feature but it does nothing for the end user as far as I can tell.

(FAC ¶41; FAC Ex. H (emphasis added).)

Samsung also does not offer any explanation for why the Chromebook's USB port performed so miserably on the tests that the Complaint discusses. The closest Samsung comes to challenging Plaintiff's allegations is its assertion that the 5 Gbit/s rate specified by the USB 3.0 Specification is the "nominal signaling data rate," rather than the actual transfer rate. (*See* Br. at 5, n.5.) Samsung quotes the Specification, which states: "When link flow control, packet framing, and protocol overhead are considered, it is realistic for 400 MBps[1] or more to be delivered to an application." (FAC, Ex. A at section 4.4.11.) Because there are 8 Megabits (Mb) in 1 Megabyte (MB), 400 MBps is equivalent to 3,200 Megabits/second. Therefore, Samsung concedes that a realistic transfer rate for a USB 3.0 device is 3,200 Megabits/second.

---

[1] "MBps" refers to *Megabytes*/second, as opposed to "Mbps," which refers to *Megabits*/second.

4

As the FAC makes clear, the Chromebook's USB port is *far* slower than even the 3,200 Megabits/second rate that Samsung concedes is reasonable. When transmitting data to a flash drive, the maximum speed of the Chromebook's USB port—achieved when transferring a file from the Imation Pocket Pro to the Chromebook—was a mere 123.6 Megabits/second. (FAC ¶ 46.) Accordingly, the Chromebook's USB port is *over 25 times slower* than the rate that Samsung *admits* is a realistic rate of operation, as set forth in the USB 3.0 Specification. The following chart summarizes the speeds at issue in this case:



Further, Samsung does not dispute the Amended Complaint's allegation that "the investigator's tests show how the Chromebook's USB 3.0 port operates in the best-case scenario under normal use." (FAC at ¶ 51.) Therefore, Samsung cannot contend that the tests are defective or that the Chromebook is capable of achieving the speeds required by the USB 3.0 specification.

Accordingly, far from undermining Plaintiff's allegations, the USB 3.0 Specification bolsters Plaintiff's claims. The Court should reject Samsung's attempt to misrepresent the contents of the USB 3.0 Specification, and should find that the First Amended Complaint adequately alleges that the Chromebook does not have a USB 3.0 port.

**II. The Court Should Not Dismiss Plaintiff's Claims Under the New Jersey Consumer Protection Laws**

Plaintiff's claims under the New Jersey consumer protection laws should go forward. As explained below, the choice of law principles require application of New Jersey law. However, the Court may defer the question of which state's law applies until class certification.

**A. Plaintiff Has Article III Standing to Assert His Claims**

The Third Circuit most recently recited the requirements of Article III constitutional standing as follows:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*In re Gerber Probiotic Sales Practices Litig.*, No. CIV.A. 12-835 JLL, 2014 WL 5092920, at *4 (D.N.J. Oct. 10, 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Samsung does not argue that the First Amended Complaint fails to meet *any* of these three requirements. Instead, Samsung relies on *In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, No. CIV. 12-169, 2013 WL 5503308, at *11 (D.N.J. Oct. 2, 2013), in which the Court held that the plaintiffs lacked standing to assert claims under the laws of the states in which they do not reside. That case, however, was wrongly decided as it confuses constitutional standing with the question of choice-of-law. Indeed, the case contradicts the Third Circuit's *subsequent* holding in *In re Gerber* that named plaintiffs—including plaintiffs who resided outside New Jersey—had Article III standing to pursue class action claims under "a number of New Jersey state law claims." (*Id.* at *2, *4-6.)

6

### B. Choice of Law Principles Require that New Jersey Law Be Applied.

Samsung argues that choice of law principles require that Florida law be applied to this case. In fact, the opposite is true, because there is no "actual conflict" between the consumer protection statutes of New Jersey and Florida.

In diversity cases, federal courts apply the forum state's choice of law rules to determine which state's substantive laws are controlling. *Maniscalo v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206 (3d Cir.2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). In conducting the choice of law analysis, New Jersey employs the "most significant relationship" test of the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 155, 962 A.2d 453 (2008) ("In balancing the relevant elements of the most significant relationship test, we seek to apply the law of the state that has the strongest connection to the case."). This analysis, which must be performed on an issue-by-issue basis, consists of two steps. First, the Court must determine whether an actual conflict exists between New Jersey law and the law of a competing state. *Snyder v. Farnam Cos., Inc.*, 792 F.Supp.2d 712, 717 (D.N.J. 2011). If no conflict exists, then the Court applies the law of the forum state. *Id.* Second, if an actual conflict exists, the Court must determine which state has the most significant relationship to the claim. *Id.* In making this determination, the Court must weigh the factors set forth in the Restatement that correspond to the plaintiff's cause of action. *Id*.

Here, the Court should apply the law of New Jersey because there is no "actual conflict" between the New Jersey Consumer Fraud Act and Florida's Deceptive and Unfair Trade Practices Act. *See Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, No. ATL-L-3015-03, 2005 WL 2205341, at *27 (N.J. Super. Ct. Law Div. July 29, 2005)

7

("Having reviewed the FDUTPA and case law interpreting the Act, this court finds that applying the CFA to the instant matter would not frustrate the policies or intentions of Florida law.") (reversed on other grounds, 192 N.J. 372, 929 A.2d 1076 (2007)).

Samsung argues that there is an actual conflict between the CFA and the FDUTPA because the CFA does not require reliance, whereas the FDUTPA does. (*See* Br. at 8.) In support, Samsung relies entirely on *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992). Samsung ignores, however, the more recent cases in the Eleventh Circuit, the Florida courts, and this Court—all of which reach the opposite conclusion. *See Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) (holding that "the FDUTPA does not require a plaintiff to prove actual reliance on the alleged conduct."); *see also State Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC*, 946 So.2d 1253, 1258 (Fla. 1st DCA 2007) (holding that, under the FDUTPA, "a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.") (quoting *State Office of Atty. Gen., Dep't of Legal Affairs v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. Dist. Ct. App. 2004)); *Int'l Union of Operating Engineers Local No. 68 Welfare Fund*, 2005 WL 2205341, at *27 (holding that there was no actual conflict between the CFA and the FDUTPA). Because there is no "actual conflict," the choice of law analysis ends and New Jersey law applies. *See* Snyder, 792 F.Supp.2d at 717.[2]

---

[2] In addition, the Samsung website's Terms of Use expressly require the Court to apply New Jersey law to claims related to the Terms of Use. (*See* FAC ¶ 9.) The Terms of Use discuss "Materials," which include the misleading information regarding the Chromebook's USB port that Samsung posted on its website and that Plaintiff viewed.

**C.  At A Minimum, Samsung's Arguments Against New Jersey Choice Of Law Should Be Deferred Until Class Certification**

For the reasons stated above, the Court should find that Plaintiff has Article III standing and that New Jersey law applies to this dispute. However, the Court may decide, as other courts in this District have decided, to defer ruling on these issues until after class certification.

On at least two occasions, courts in this District have refused to consider arguments like Samsung's prior to class certification. *See Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 505 (D.N.J. 2009); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 204 (D.N.J. 2003). In *Ramirez*, for example, the Court noted that at the motion to dismiss stage, the question of whether Plaintiffs could:

> allege violations of consumer protection laws in states other than those in which they purchased Defendants' calling cards is immaterial. The issue Defendants raise is one of predominance—whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed.R.Civ.P. Rule 23(b)(3). *See generally* 7AA Charles Allen Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1780.1 (3d ed. 2008) (discussing the requirements of Rule 23(b)(3)). This is an issue to be resolved at the class certification stage of the litigation.

*Id.* at 505. *See also Salsitz v. Peltz*, 210 F.R.D. 95, 97 (S.D.N.Y. 2002) (same).

Indeed, courts in this District often defer choice of law analysis until the factual record has been developed. *See In re Hypodermic Products Antitrust Litig.*, Civ. No. 05–1602, 2007 WL 1959225 (D.N.J. June 29, 2007) ("Because neither the 'Indirect Class,' nor the 'D.C. Indirect Class' has yet to be certified, the Court will not predict which state law(s) would be applicable in the event that said Classes are certified…") (internal quotation marks omitted); *In re K–Dur Antitrust Litig.*, 338 F.Supp.2d 517, 541 (D.N.J. 2004) ("[a] choice of law analysis would be premature at this [motion to dismiss] stage of the proceedings."); *Harper v. LG Elecs. United*

9

*States, Inc.*, 595 F.Supp.2d 486, 491 (D.N.J. 2009) ("[T]he Court will defer its choice-of-law decision until the parties present a factual record full enough to permit this Court to undertake the second step of the "governmental interest" analysis.").

Deferring consideration of the choice of law issues is particularly justified in this case, where the factual record regarding the location of Samsung's misrepresentations remains undeveloped. Discovery will probably show that Samsung's misrepresentations—including the misrepresentations it made on its website, on the Chromebook product literature, and on the product packaging—were made in New Jersey. In addition, Samsung likely developed and maintained its website in New Jersey. Further, discovery will also probably show that Samsung tested the speed of the Chromebook's USB ports in New Jersey. Accordingly, the Court may choose to defer resolution of the choice of law issues until the factual record has been developed.

### D.   Plaintiff Has Properly Pled His Claims For Relief under New Jersey Law

Samsung next argues that even if New Jersey law applies, Plaintiff has not made out a proper claim under the Truth in Consumer Contract Warranty and Notice Act ("TCCWNA"). Samsung is mistaken.

To state a claim under the TCCWNA, a plaintiff must allege, among other things, that "the 'seller offers a consumer a contract' or gives or displays any written notice, or sign." *Watkins v. DineEquity, Inc.*, No. 13-1359, 2014 WL 5786603, at *3 (3d Cir. Nov. 7, 2014). Samsung argues that Plaintiff has failed to do so here. In particular, Samsung argues that its "representation as to the existence of a USB 3.0 port and/or use of the USB 3.0 logo is not equivalent to the display of a "notice" or "sign" as those terms are used in the TCCWNA." (Br. at 14.)

Shortly before Samsung filed its motion to dismiss, however, the Third Circuit confirmed that the terms "written offer," "notice" and "sign" must be construed broadly. In *Watkins*, the Third Circuit held that "a restaurant menu constitutes a written offer, notice or sign for TCCWNA purposes." *See* 2014 WL 5786603, at *3. Samsung does not mention this case.

If a restaurant menu constitutes a written offer, notice, and/or sign, then Samsung's writings at issue here must also. As set forth in the First Amended Complaint, Samsung displayed numerous notices and signs in connection with its offer to sell the Chromebook. For example, the Chromebook's packaging includes the following notice or sign, which represents that the Chromebook has USB 3.0 "Super-speed" capabilities:



(FAC ¶ 25, Ex. G at 1.) In addition, Samsung labeled the Chromebook's purported USB 3.0 port with the SuperSpeed USB Trident logo:



(*Id.* ¶ 26, Ex. G at 2.) The First Amended Complaint explains that this SuperSpeed USB Trident Logo has special meaning:

> The USB Logo Usage Guidelines state: "The USB-IF SuperSpeed Trident logo is for use with product that signals at 5Gb/s." (*Id.*) The Guidelines further state that the logo can be used only with a product "based on and compliant with the USB 3.0 specification." (*Id.*)

(FAC ¶20.)

Like a restaurant menu, Samsung's writings indicate to the consumer what the consumer is supposed to receive upon purchase—a computer that is capable of USB 3.0 "Super-speed" operation. Further, the use of the SuperSpeed USB Trident logo indicates to the consumer that the product must signal at 5Gb/s. (*See* FAC ¶20.) Accordingly, the writings fall within the scope of the TCCWNA. *See Watkins*, 2014 WL 5786603, at *3.

Samsung argues that the USB 3.0 port "does not set forth any terms or conditions applicable to Plaintiff's purchase or in any other way effect [*sic*] Plaintiff's legal rights, which is the concern of TCCWNA." (Br. at 14.) The TCCWNA, however, does not require that a writing state "terms or conditions." The restaurant menu at issue in *Watkins* certainly did not have "terms" or "conditions," and yet the Third Circuit found that it met the requirements of the TCCWNA. 2014 WL 5786603, at *3.

Finally, Samsung argues that Plaintiff has not shown any "violation of a clearly established legal right," as required by the TCCWNA, because Plaintiff has not identified any regulation or statute that "squarely" prohibits the writings at issue here. (Br. at 14-15.) Samsung is wrong. Plaintiff has alleged, for example, that Samsung has violated the Consumer Fraud Act ("CFA"). (*See* FAC ¶¶ 70-105.) Under New Jersey law, "a consumer contract that violates a clearly established legal right under the CFA regulations is also a violation of the TCCWNA." *Bosland v. Warnock Dodge, Inc.*, 933 A.2d 942, 949 (App. Div. 2007). In addition, Plaintiff has alleged Breach of Implied Warranties in violation of N.J.S.A. 12A:2-314, *et seq.*, and Breach of Express Warranty in violation of N.J.S.A. 12A:2-131. (*See* FAC ¶¶ 118-141; 146-153.)

Accordingly, Plaintiff's claims under the TCCWNA should not be dismissed.

## III. The Court Should Not Dismiss Plaintiff's Claims Under Florida Consumer Protection Laws

If Plaintiff is unsuccessful at applying New Jersey law, he has pled, in the alternative, claims under Florida law. Samsung does not dispute applicability of Florida law but argues that Plaintiff has not pled the required elements of each Florida claim. Samsung is again mistaken.

### A. Plaintiff States a Claim Under the Florida Deceptive and Unfair Trade Practices Act.

Samsung argues that Plaintiff has not stated a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") because "he does not adequately allege that Samsung has engaged in an unfair or deceptive practice." (Br. at 16.) In particular, Samsung argues that "Plaintiff has not plausibly alleged that the Chromebook's USB 3.0 port fails to meet [the USB 3.0 Specification] requirements."

This argument, which Samsung repeats throughout its brief, has already been addressed in Section I above. For the same reasons discussed in Section I, the argument should be rejected. In particular, Samsung fails to address the facts that (i) the Chromebook's 3.0 USB port cannot reach the required transfer speeds, even when used out of the box and in an ideal testing environment, with no other software applications running, and with no other hardware devices being connected to it (*see* FAC ¶¶ 44-51); and (ii) the Chromebook's supposed USB *3.0* port is much slower than USB *2.0* ports that were designed many years ago. (*Id.* 47.) In fact, Samsung does not offer any explanation for why the Chromebook's USB port failed *all* of the various transfer speed tests discussed in the First Amended Complaint.

Samsung also argues that "Plaintiff does not allege that Samsung made *any* representations regarding the data transfer speed that the USB 3.0 port should or could achieve." (Mot at 17.)

13

But Samsung does not dispute that it ***repeatedly*** represented that its port was a "USB 3.0" port capable of "Super-speed" operation. (*See* FAC ¶¶ 21-31.) Nor does Samsung dispute that the First Amended Complaint alleges that "SuperSpeed" is defined by the USB 3.0 specification as "USB operation at 5 Gbps"—a speed that the Chromebook's port cannot even come close to achieving. (*See id.* ¶ 17.) Further, Samsung does not dispute that the USB 3.0 Specification requires that ***all*** USB 3.0 compliant hosts of personal computers must support SuperSpeed operation. (*See id.* ¶ 19.) Finally, Samsung does not dispute that the USB Logo Usage Guidelines require that "[t]he USB-IF SuperSpeed Trident logo is for use with product that signals at 5Gb/s," and that the logo can be used only with a product "based on and compliant with the USB 3.0 specification." (*Id.* ¶ 20.)

Samsung also argues that "Plaintiff had no 'reasonable expectation' that the Chromebook's USB 3.0 port—or any USB 3.0 port—would transfer data at a speed of 5 Gbit/s." That argument fails for the same reasons. In addition, at a minimum, Plaintiff had a reasonable expectation that the Chromebook's USB port would operate faster than USB ***2.0*** ports that were manufactured a decade ago. (*See* FAC, p. 2, ¶¶ 40, 41, 47.)

The two cases that Samsung cites—*Kuenzig v. Kraft Foods, Inc.* and *Merl v. Warner Bros. Entm't*—are easily distinguished. Unlike Samsung, the defendants in those cases had included accurate disclosures on the product which contradicted the allegedly misleading representation. *See* No. 8: 11-CV-838-T-24, 2011 WL 4031141, *8-*9 (M.D. Fla. Sept. 12,2011); 2012 WL 366927, at *4 (M.D. Fla. Feb. 3, 2012). In contrast, as alleged in the First Amended Complaint, "[a]t no time did Samsung inform consumers or its retailers that the Chromebook does not have a SuperSpeed USB 3.0 port." (FAC ¶32.) Samsung has not identified a single disclosure that it

gave to consumers that would have informed them that the Chromebook did not have a USB 3.0 port.

### B. Plaintiff States a Claim Under Florida's Misleading Advertising Statute.

Samsung did not address Plaintiff's claims under Fla. Stat. § 817.41 separately, but rather incorporated by reference its arguments with respect to Plaintiff's common law fraud claim. Plaintiff will do the same, and will address Samsung's arguments in the following section.

## IV. The Court Should Not Dismiss Plaintiff's Common Law Fraud Claims

### A. Plaintiff Has Properly Pled Fraud in the Inducement.

Samsung argues that Plaintiff's fraud claims should be dismissed because Plaintiff has not alleged that he has suffered any "economic loss" apart from the loss resulting from the breach of contract, i.e., the amount he paid for the computer. (Br. at 19.)[3] In fact, Plaintiff has alleged that he was defrauded into paying a premium price to obtain a USB 3.0 port (FAC ¶87) and that "[h]ad Plaintiff known that the Chromebook's USB data transfer rates were so slow, or that they were not in compliance with the USB 3.0 specification, he would not have purchased the Chromebook." (*Id.* ¶52.) Because Plaintiff's fraud claims arise out of fraudulent inducement, no separate "economic loss" is required, and the claims are actionable.

Samsung admits that New Jersey courts recognize fraud-in-the-inducement claims without demanding a separate "economic loss." (*See* Br. at 19 (citing *Graphic Services, Inc. v. Graphic Innovators, Inc.*, No. 13-cv-6482, 2014 WL 1818235, at *6-*8 (D.N.J. May 8, 2014).) Samsung argues, however, that Florida law does not recognize such claims. Samsung is incorrect. Under Florida law, the "economic loss" rule does not bar fraudulent inducement claims where the plaintiff alleges that he paid money that he would not otherwise have paid, even if the same

---

[3] There is no dispute that the economic loss rule does not

damages would arise from a breach of contract claim. For example, in *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238 (Fla.1996), the court stated:

> The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract. Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract.

Accordingly, courts applying Florida law have refused to bar fraud-based claims, where the "economic loss" is the money paid for the product, and the allegation is that the product operated more slowly or differently than it was advertised to operate. In *PFM Air, Inc. v. Dr.Ing.hc.F.Porsche A.G.*, No. 8:08-CV-392-T-17MAP, 2011 WL 254724, at *4 (M.D. Fla. Jan. 26, 2011), the plaintiffs had purchased Porsche airplanes, and had entered into a contract to convert the engines. One of the plaintiffs alleged that "the converted airplane is slower than it was represented it would be." *Id.* Another plaintiff alleged that the "useful load of the aircraft was so reduced by the conversion that the aircraft does not have the same value." *Id.* The defendant argued that the plaintiffs' claims should be dismissed for failure to satisfy the "economic loss" requirement. The court rejected that argument, holding that the economic loss requirement did not bar such claims based on fraud in the inducement. *Id.*

Samsung argues that the Florida Supreme Court's decision in *Tiara Condo Association v. Marsh & McLennan Companies, Inc.*, 110 So.3d 399 (Fla. 2013) overruled those cases. (*See* Br. at 19.) Samsung is incorrect. In *Tiara*, the Florida Supreme Court acknowledged prior case law in which there need not be a separate "economic loss" beyond the loss resulting from the breach of contract, such as where there is fraudulent inducement and where there are free-standing statutory causes of action. *See id.* at 406 (noting that "we ... reaffirmed in cases

16

involving either privity of contract or products liability, the other exceptions to the economic loss rule that we have developed, such as for ... fraudulent inducement ... or free-standing statutory causes of action still apply"). The Florida Supreme Court did *not* eliminate those exceptions in *Tiara*. *See In re MyFord Touch Consumer Litig.,* No. C-13-3072 EMC, 2014 WL 2451291, at \*14 (N.D. Cal. May 30, 2014) (rejecting argument that *Tiara* eliminated the exception for fraudulent inducement).

The two cases that Samsung cites are not to the contrary. In *Burns v. Winnebago Industries, Inc.*, No. 8:13–cv–1427–T–24 MAP, 2013 WL 4437246 (M.D. Fla. Aug. 16, 2013), although the court did find that the plaintiff's fraudulent concealment claim was barred by the economic loss rule, it made no ruling that all claims for fraud are necessarily barred by the rule. Also, the court recognized the fraudulent inducement exception to the economic loss rule but simply held that, "under the facts alleged, the exception ... do[es] not apply." *Id.* at \*4. But, the specific facts of the case are not clear from the order, and therefore why the fraudulent inducement exception was not applicable cannot be determined. And in *Aprigliano v. Am. Honda Motor Co., Inc.*, the claim at issue was based on negligent misrepresentation, not fraud in the inducement. 979 F. Supp. 2d 1331, 1337 (S.D. Fla. 2013).

Finally, Samsung does not mention that the only court to have carefully considered the line of cases Samsung cites actually held that *Tiara* did *not* eliminate the fraud-in-the-inducement exception to the economic loss rule. *See In re MyFord Touch Consumer Litig.,* 2014 WL 2451291, at \*14 (evaluating the *Tiara* and *Burns* cases, and rejecting the argument that *Tiara* eliminated the exception for fraudulent inducement).[4]

---

[4] Because there is no "actual conflict" between New Jersey and Florida law with respect to common law fraud, the Court should apply New Jersey law. *See Snyder*, 792 F.Supp.2d at 717.

17

**B.   Plaintiff Pleaded Fraud With Sufficient Particularity**

Samsung contends that Plaintiff failed to plead his common law fraud claim with sufficient particularity. (*See* Br. at 20-23.) First, Samsung argues that "Plaintiff fails to plead sufficient facts to give rise to a non-speculative inference that the Chromebook "does not, in fact, have a USB 3.0 compliant port." (Br. at 20.) Samsung refers back to the arguments it made in Part II of its brief. Those arguments are fully addressed in Sections I and III.A. above.

Second, Samsung argues that "Plaintiff fails to allege the element of knowledge." (Br. at 20.) Samsung is incorrect. The First Amended Complaint states that Samsung tested the speed of its USB 3.0 port, and therefore had knowledge of its slow speed:

> 114.   Samsung's representations—both those made directly to consumers on Samsung's website, the Chromebook product packaging, and on the product, and those made indirectly to consumers through retailers—were false, and Samsung knew that the representations were false when it made them. In particular, as described above (supra, ¶¶ 56-57), Samsung tested the speed of its purported USB 3.0 port, and confirmed that the port was incapable of achieving speeds anywhere near the 5 Gbps speed required by the USB 3.0 specification.

(FAC.) The allegation that Samsung gained this knowledge through testing is further supported by the fact that Samsung was *required* to test the speed of its USB 3.0 port:

> 56. Before Samsung released the Series 3 Chromebook it tested the speed of its purported USB 3.0 port, and was aware of the transfer rates of which it was capable. Samsung—one of the world's largest manufacturers of consumer electronics—would not release a product without first testing each of its components.

> 57. In addition, the USB Implementers Forum *requires* manufacturers to ensure that their devices actually conform with the USB 3.0 specification, which includes testing the speed of those devices. (See, e.g., Exh. A at pg. 34 ("Adopters [of the USB 3.0 specification] can demonstrate compliance with the specification through the testing program as defined by the USB Implementers Forum.") Accordingly, Samsung knew that the purported USB

18

3.0 port was incapable of achieving speeds anywhere near the 5 Gbps speed required by the USB 3.0 specification.

86. Further, Samsung *was required to* and therefore must have conducted internal testing of the speed of its purported USB 3.0 port, and confirmed that the port was incapable of achieving speeds anywhere near the 5 Gbps speed required by the USB 3.0 specification.

(FAC (emphasis added).)

Samsung essentially admits that these allegations distinguish this case from *Morris v. BMW of N. Am., LLC*, No. 13-4980, 2014 WL 793550, at *7 (D.N.J. Feb. 26, 2014), in which the plaintiff merely alleged, without any factual support, that the defendant had tested the product. In contrast to *Morris*, Plaintiff has alleged that Samsung was actually *required* to test its USB 3.0 SuperSpeed port.

Samsung's only response to these allegations is that "Plaintiff has not adequately alleged that the Chromebook's USB 3.0 port fails to satisfy the Implementer Forum's testing requirements." (Br. at 22.) That argument fails for the reasons discussed above. (*See supra*, Sections I and III.A.)

## V. The Amended Complaint States a Claim for Breach of Implied Warranties Under Both New Jersey and Florida Law

### A. The Amended Complaint States a Claim for Breach of Implied Warranty of Merchantability.

Under both New Jersey and Florida law, the implied warranty of merchantability requires all goods to "(a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; . . . and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any." N.J. Stat. Ann. § 12A:2-314; Fl. Stat.

19

§ 672.314. The only one of these prongs that Samsung addresses is (c), although Plaintiff also alleges that the Chromebooks would not pass without objection in the trade, are not of fair quality given the description, are not adequately labeled, and do not conform to the promises on the label.  (FAC ¶¶39-51, 121-27.) At a minimum, Plaintiff's implied warranty of merchantability claim should not be dismissed because he has sufficiently alleged that the Chromebooks fail these prongs.

 "Courts typically find goods to be unfit for their ordinary purposes 'when they can identify one of three general types of defects: manufacturing defects, design defects, and failure to give the buyer proper instructions with respect to the goods.'" *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F.Supp.2d 529, 542 (D.N.J. 2011). Goods with "remarkable defects" breach the implied warranty, but "minor defects" do not. *Zabriskie Chevrolet, Inc. v. Smith*, 240 A.2d 195, 204 (N.J. Sup. Ct. 1968) (finding a breach of the implied warranty due to a "remarkable defect," where a new car was "practically inoperable and endowed with a defective transmission"); *compare Adams v. Peter Tramontin Motor Sales, Inc.*, 126 A.2d 358, 364 (N.J. Sup. Ct. 1956) (finding no breach of the implied warranty where "relatively minor adjustments" would put a car "in good working order").

 Samsung argues that Plaintiff' fails to allege that the Chromebooks are unfit for their ordinary purpose of "computing." (Br. at 25-26.) Yet again, Samsung oversimplifies Plaintiff's claims in order to obviate its misconduct. The "ordinary purpose" of Chromebooks with USB 3.0 ports is to compute in a manner that allows the user to transfer data at USB 3.0 speeds. (FAC ¶¶17-20.) Samsung advertised the high speeds achievable with the Chromebook's USB 3.0 port. (*Id.* ¶¶21-30.) Indeed, Plaintiff did not purchase an ordinary computer at a regular price. He purchased a laptop that purportedly had a USB 3.0 port at a price premium. (*Id.* ¶54.)

Here, failing to include a USB 3.0 port in the Chromebook is a "remarkable defect" that constitutes a breach of the implied warranty. Samsung's representations that the Chromebooks contained a USB 3.0 port was fundamental to Plaintiff's desire to purchase the computer, he intentionally paid a "price premium" for the computer, and would not have purchased the Chromebook had he known it did not contain a USB 3.0 port. (FAC ¶¶ 35-38; 54.) Samsung's cases are unconvincing and readily distinguishable. Each case involves a relatively minor deficiency that was only incidental to the product's purpose and was never part of the fundamental bargain.[5] *Cf. Dzielak v. Whirlpool Corp.*, Case No. CIV. 2:12-0089 KM, 2014 WL 2758746 (D.N.J., June 16, 2014) (holding plaintiff stated claim for breach of implied warranty of merchantability based on allegations that the washers did not perform their core functions as advertised).

The facts in this case are remarkably similar to those in *Dzielak*. The plaintiff in *Dzieak* alleged that the washing machines sold by defendant included an Energy Star logo, which signifies to consumers that the appliance meets certain Department of Energy standards of energy efficiency, even though the washing machines did not comply with the Energy Star requirements. 2014 WL 2758746. Defendant argued that these allegations did not state a claim for breach of implied warranty of merchantability because the washing machines still performed their general purpose of washing clothes. *Id.* The Court disagreed, distinguishing *Green* and *Lieberson*, noting that those cases focused on "incidental" qualities of the products at issue. In contrast, the Energy Star logo was central to the product's value or function and

---

[5]  *See, e.g., Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 283 (D.N.J. 2011) (plaintiff alleged that coffee brewer was defective because it brewed less coffee than expect); *Lieberson*, 865 F. Supp. 2dd at 542-44 (plaintiff alleged that soap intended for cleaning and moisturizing did not help baby sleep); *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846, 2011 WL 2976839, at *23 (D.N.J. July 21, 2011)  (plaintiff alleged that televisions had deteriorating picture quality).

21

denoted a quality that consumers are allegedly wiling to pay a premium. *Id.* Here, Plaintiff alleges that the USB 3.0 Trident logo signifies that the Chromebooks contained a SuperSpeed USB 3.0 port, which was central to the product's value *and* function. (*See* FAC ¶¶ 35-38; 54.)

### B. Florida's Privity of Contract Requirement is Met

Samsung also argues that Plaintiff's implied warranty claims under Florida law must be dismissed because Florida requires privity of contract. Plaintiff has pled privity of contract by alleging facts sufficient to satisfy the agency doctrine.

Plaintiff alleges that Best Buy (and the other retailers) are the agents of Samsung related to the sale of Chromebooks. (FAC ¶¶ 29-31, 81, 125-127.) Specifically, Plaintiff alleges that "[a]ll of the representations made by the retailers [about the Chromebooks] were directed and authorized by Samsung. Indeed, Samsung authorizes its retailers such as Best Buy to repeat and extend Samsung's representations and warranties to consumers such as Plaintiff." (*Id.* ¶ 81.) Implied warranty claims will not be dismissed under Florida law where the consumer purchased from the defendant's agent. *See Bland v. Freightliner,* 206 F.Supp.2d 1202 (M.D. Fla. 2002) (acknowledging that privity may exist between a manufacturer of vehicle and purchaser even though vehicle was not purchased directly from manufacturer, but instead from a dealer alleged to be the manufacturer's agent).

### C. Samsung Did Not Effectively Disclaim the Warranty For Particular Purpose.

Samsung next argues that Plaintiff's claim for breach of implied warranty for particular purpose must be dismissed because Samsung effectively disclaimed the warranty. (Br. at 27.) However, Samsung's disclaimer is not clear and conspicuous. In the *same* paragraph of the warranty cited and relied upon by Samsung, the Limited Warranty states: "NO WARRANTIES WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY

IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE SHALL APPLY AFTER THE EXPRESS WARRANTY PERIODS STATED ABOVE." (*See* Ex. 2 to Samsung's Br.) This provision acknowledges that the implied warranty of fitness for a particular purpose shall apply during the express warranty period. At a minimum, this ambiguity in the disclaimer cannot establish that the disclaimer is "clear and conspicuous" for purposes of sustaining a motion to dismiss.

**VI. The Complaint States a Claim for Breach of Express Warranty 12A:2-131, and in the alternative, Fla. Stat. § 672.313(b))**

To state a cause of action for breach of express warranty under either New Jersey or Florida law, a plaintiff must allege: "(1) that defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Arlandson v. Hartz Mountain Corp.*, 792 F.Supp.2d 691, 706 (D.N.J. 2011); *see also* N.J. Stat. Ann. § 12A:2–131; Fla. Stat. § 672.313(b). An express warranty can be created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," or "[a]ny description of the goods which is made part of the basis of the bargain." N.J.S.A. § 12A:2-313; Fla. Stat. § 672.313. It is not necessary to "use formal words such as 'warrant' or 'guarantee'" to create an express warranty. *Id*. In practice, this means "[a] statement can amount to a warranty ... if it could fairly be understood ... to constitute an affirmation or representation that the [product] possess[s] a certain quality or capacity relating to future performance." *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 570 (7th Cir. 1993) (citations omitted) (applying New Jersey law).

Plaintiff has alleged that Samsung affirmed and represented on its website and its product, and product packaging that the Chromebook had a USB 3.0 port, that Plaintiff relied on these representations as "part of the basis of the bargain," and would not have purchased the Chromebook if he knew it did not contain a USB 3.0 port. ((FAC ¶¶ 21-30; 33-38.)

## A. Samsung Did Not Effectively Disclaim its Express Warranties Regarding its USB 3.0 Port

Samsung does not dispute that its USB 3.0 representations constitute express warranties. However, Samsung argues that the Chromebook Limited Warranty provided a one-year warranty for "manufacturing defects in materials and workmanship" and disclaimed all other express warranties. (Br. at 28-29.) However, "a warranty disclaimer inconsistent with an express warranty is inoperative." *L.S. Heath & Son, Inc.,* 9 F.3d at 570 (finding AT&T created an express warranty when it represented that its "completely integrated data processing and voice/data communications network [will] satisf[y] all your aforementioned objectives" and refusing to enforce a subsequent disclaimer similar to Samsung's Limited Warranty); *accord Gladden v. Cadillac Motor Car Div., General Motors Corp.*, 83 N.J. 320, 330 (1980) ("The complete exclusion of express warranties is strongly disfavored in the UCC."); *Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.,* 890 F.2d 108 (9th Cir. 1989) (finding that a disclaimer of warranties in a "printed form contract was ineffective to void [prior] express warranties" where seller was alleged to have warranted that a computer would "put your inventory, receivables, and invoicing under complete control"). Moreover, the Limited Warranty does not even mention the USB 3.0 port, let alone clearly and conspicuously disclaim its USB 3.0 warranties.

**B.   Plaintiff Was Not Required to Provide Samsung Notice Prior to Filing Suit**

Samsung also argues that Plaintiff's breach of express warranty claim fails because he failed to provide Samsung notice of the breach before filing suit. However, "notice of breach of either express or implied warranty is not required in an action against a remote manufacturer who is not the immediate seller of a product." *Coyle v. Hornell Brewing Co.,* Case No. CIV.08-02797 (JBS), 2010 WL 2539386, at \*6 (D.N.J., June 15, 2010) (holding that "Plaintiff's failure to provide Defendants notice of breach before commencing suit therefore does not preclude her from seeking a remedy"); *see also Hammer v. Vital Pharmaceuticals*, Case No. 11-4124 MAS, 2013 WL 5470007, at \*2 (D.N.J., Sept. 30, 2013) (citing *Strzakowlski v. General Motors Corp.,* Case No. 04–4740(JHR), 2005 WL 2001912, at \*3 (D.N.J. Nov. 18, 2011) (holding pre-litigation notice was not required as to a "manufacturer who was not the immediate seller")); *Federal Ins. Co. v. Lazzara Yachts of North America, Inc.*, Case No. 8:09CV607-T-27MAP, 2010 WL 1223126, at \*5 (M.D. Fla., Mar. 25, 2010) (holding that buyer was not required to provide a "remote manufacturer" with notice of a product defect to plead breach of express warranty").

**VII. Plaintiff is Entitled to Equitable Relief**

**A.   Plaintiff *Ha*s Sufficiently Alleged He Is Under Threat of Suffering Injuries from Samsung's Conduct**

"To seek injunctive relief, a plaintiff must show that he is under threat of suffering injury-in-fact" in the future. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Plaintiff has alleged that he is under threat of suffering such injury because that he intends to purchase Samsung's products in the future, and therefore he "is likely to be deceived again by any misrepresentations with respect to the USB capabilities of such products." (FAC ¶¶ 55, 101.) Additionally, Plaintiff will be subjected to Samsung's false advertising of its products USB

capabilities on its website, product, product packaging, and/or anywhere else. (*Id.* ¶ 101.) These injuries are sufficient to meet Article III's standing requirement. *See, e.g.*, *Student Public Interest Research Group of New Jersey, Inc. v. Georgia-Pacific Corp.*, 615 F.Supp. 1419, 1424 (D.N.J. 1985) (holding that a plaintiff may sue so long as s/he can demonstrate an "identifiable trifle constituting actual or threatened injury, because such harm is sufficient to guarantee that plaintiffs have a concrete interest in the outcome of the litigation") (citing *United States v. SCRAP*, 412 U.S. 669, 689, n.14 (1973)).[6]

Samsung argues that Plaintiff lacks standing because he did not allege that he intends to purchase another Chromebook again and he is already aware of Samsung's misrepresentations regarding the Chromebook. (Br. at 30.) Samsung's interpretation of *McNair v. Synapse Group Inc.*, 672 F.3d 213, 225 (3d Cir. 2012) and reliance on it to support Samsung's assertion that these allegations are necessary to establish standing is misplaced. The plaintiff in *McNair* was a former subscriber of defendants' magazine subscription service. *Id.* In determining during class certification that the Court lacked standing over plaintiff's claim for injunctive relief, the Court focused on the fact that the plaintiffs did not plead *any* basis for standing. *Id.* at 226, FN6 ("Appellants only needed to demonstrate that they were "likely to suffer future injury" from the Synapse's conduct. The best way to do that, of course, would have been to show they were Synapse customers, but that is not necessarily the only way. The problem here is that Appellants provided no basis for their assertion of future harm") (internal citations omitted). The *McNair* Court cited *Goldstein v. Home Depot U.S.A., Inc.*, 609 F.Supp.2d 1340, 1348 (N.D.Ga. 2009) (former customer of the defendant's who did not allege "that he plans in the

---

[6] Further, as addressed in Section II.A.1, *supra*, standing issues are properly addressed after the class certification stage.

future to purchase a Dryer from Defendant or that he plans in the future to have a Dryer installed by Defendant" lacked standing to pursue injunctive relief on behalf of a class of consumers who might be subjected to the allegedly illegal practice) for the proposition that a plaintiff must plead a "reasonable likelihood of future injury." *Id.* at 216.  This is exactly what Plaintiff has done here – he alleges that intends to purchase another product from Samsung and he could be fooled again because Plaintiff cannot test the speed of the USB port prior to purchase to evaluate the truthfulness of Samsung's representations regarding the USB's capabilities. (FAC ¶¶ 55.) Likewise, Plaintiff is not a former customer of Samsung's who terminated a subscription service like the plaintiff in *McNair*; Plaintiff is a current owner of a Samsung Chromebook and a current recipient of Samsung's advertising campaign and representations regarding the USB capabilities of its products. (*Id.* at ¶¶ 55, 101.)

At least one court in this District has rejected Samsung's sweeping characterization of *McNair*, finding that it is sufficient at the pleading stage for the plaintiff to allege that s/he has a present intention to continue as defendant's customer to establish standing. *See Dicuio v. Brother Intern. Corp.*, Case No. 11–1447, 2012 WL 3278917 * 15 (D.N.J. Aug. 9, 2012) ("As in *McNair*, in the absence of allegations that Plaintiffs intend to purchase a second printer, the mere chance that Plaintiffs may choose at some later date to do so and thereby suffer more harm is not sufficient to confer Article III standing.").  Here, Plaintiff has specifically alleged that he "intends to purchase Samsung products in the future, and therefore is likely to be deceived again by any misrepresentations with respect to the USB capabilities of such Samsung products." (FAC ¶ 55.) Consequently, this Court has Article III standing over Plaintiff's claims for injunctive relief.

**B.   Alternatively, the Court Should Sever Plaintiff's Claims for Injunctive Relief**

Injunctive relief is an important remedy for Plaintiff's consumer claims arising under New Jersey and Florida law.  *See, e.g.* N.J.S.A. 56:8-8; *see also Arcand v. Brother Intern. Corp.*, 673 F.Supp.2d 282, 302 (D.N.J. 2009) ("At its core, the [NJCFA] seeks to 'protect the consumer against imposition and loss as a result of fraud and fraudulent practices by persons engaged in the sale of goods and services…'"); Fla. Stat. § 501.202(2); *Kelly v. Palmer, Reifler, & Associates, P.A.*, 681 F.Supp.2d 1356, 1372 (S.D. Fla. 2010) (the purpose of the Florida Deceptive and Unfair Trade Practices Act is to "protect the consuming public and legitimate business enterprises from … unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce"). If this Court finds that Plaintiff does not have standing to pursue injunctive relief, his claims for that relief should be severed and dismissed without prejudice to refilling in state court. *See, e.g. Machlan v. Proctor & Gamble, et al,* Case No. 14-cv-01982-JD at *6-8 (N.D. Cal. Jan. 7 2015) (attached hereto as Ex. B) (severing injunctive relief claim and remanding that claim to state court); *Lee v. Am. Nat. Ins. Co.,* 260 F.3d 997, 1007 (9th Cir. 2001) (holding that a case may be "effectively split up when … some claims cannot be adjudicated in federal court.") (cited with approval by *American Capital Acquisitions Partners LLC v. Fortigent LLC*, Case No. 14-1926, 2014 WL 6981968, at *3 (3d Cir., Dec. 11, 2014)); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951-52 (S.D. Cal. 2007) ("If this Court lacks jurisdiction to enjoin Defendants . . . consumers in Plaintiff's position may yet be able to split their claim and seek injunctive relief in state court.").

28

## CONCLUSION

For the reasons above, Plaintiff respectfully requests that Samsung's motion to dismiss be denied.

Dated: January 28, 2015                    Respectfully submitted,

                                            s/Michael J. DeBenedictis, Esq.

                                            **On the Brief:**
                                            Adam J. Gutride, Esq.
                                            Seth A. Safier, Esq.
                                            Todd Kennedy, Esq.
                                            Anthony J. Patek, Esq.
                                            Marie McCrary, Esq.
                                            (*pro hacs* yet to be pending)
                                            100 Pine Street, Suite 1250
                                            San Francisco, California 94111
                                            Telephone: (415) 789-6390
                                            Facsimile: (415) 449-6469
                                            adam@gutridesafier.com
                                            seth@gutridesafier.com
                                            todd@gutridesafier.com
                                            anthony@gutridesafier.com
                                            marie@gutridesafier.com

                                            Attorneys for Plaintiff Scott Miller

29