<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| **SCOTT MILLER, on behalf of himself and all others similarly situated,** | : : : | |
| | : | **Civil Action No. 14-4076** |
| **Plaintiff,** | : : | |
| **v.** | : : | **OPINION AND ORDER** |
| **SAMSUNG ELECTRONICS AMERICA, INC.,** | : : : | |
| **Defendant.** | : : | |
| | : | |

SALAS, DISTRICT JUDGE

Plaintiff Scott Miller ("Plaintiff") brings this action on behalf of himself and similarly situated individuals, alleging misrepresentations relating to Samsung's Series 3 Chromebook laptop (the "Chromebook"). (D.E. No. 15 ("Am. Compl.")). Before the Court is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) by Defendant Samsung Electronics America, Inc. ("Samsung" or "Defendant"). (D.E. No. 16). The Court has considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons below, the Court grants in part and denies in part Samsung's motion to dismiss.

**I.     JURISDICTION AND VENUE**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(a) because this is a putative class action in which the amount in controversy exceeds five million dollars (exclusive of interests and costs) and at least one defendant and one proposed class member are

citizens of different states.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because

Samsung's corporate headquarters is located in this district.

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a Florida resident who purchased a Chromebook on August 15, 2013.  (Am.

Compl. ¶¶ 1, 38).  Samsung is a New York corporation, with its principal place of business in New

Jersey.  (*Id.* ¶ 2).  Samsung "advertises, markets, sells, or offers for sale a variety of consumer

electronics," including the Chromebook.  (*Id.* ¶ 3).

Plaintiff alleges that "Samsung specifically marketed, advertised and represented to

consumers that its Series 3 Chromebook has a Universal Serial Bus ("USB") 3.0 'SuperSpeed'

port" even though the Chromebook does not in fact have that port.  (*Id.* at 2).  Plaintiff alleges that,

as a result, the Chromebook "is incapable of achieving data transfer speeds anywhere near the

speeds required by the USB 3.0 specification."  (*Id.*).

According to Plaintiff, the USB specification "was developed by a number of companies

that collectively formed the USB Implementers Forum, Inc. ("Implementers Forum"), a non-profit

corporation organized for the purposes of developing and distributing specifications and other

documents that augment, enhance, or extend the USB specification."  (*Id.* ¶ 14).  The Implementers

Forum released the original USB 1.0 specification in 1996, which included two data transmission

modes: "Low-Bandwidth" and "Full-Bandwidth."  (*Id.* ¶ 15).  The USB 2.0 specification, released

in 2000, added a third data transmission mode: "Hi-Speed."  (*Id.* ¶ 16).

In 2008, the Implementers Forum released the current USB 3.0 specification, which added

a fourth data transmission mode: "SuperSpeed."  (*Id.* ¶ 17).  The term "SuperSpeed" is defined by

the USB 3.0 specification as "USB operation at 5 Gbps."[1]  (*Id.*).  According to Plaintiff, the USB

---

[1] The abbreviations "Gbps" and "Gbit/s" both refer to "Gigabits per second."

3.0 specification requires that USB 3.0 ports for personal computers like the Chromebook "be capable of transferring data at rates corresponding to all four data transfer modes, including SuperSpeed." (*Id.* ¶ 18). Products that comply with the USB 3.0 specification are permitted to display the Implementer Forum's copyrighted SuperSpeed Trident logo. (*Id.* ¶ 20).

Plaintiff alleges that Samsung advertises that the Chromebook has a USB 3.0 port in various places, including Samsung's website, the Chromebook specifications, the Chromebook User Guide, and the Chromebook packaging. (*Id.* ¶¶ 22-25). He further alleges that Samsung advertises that the Chromebook contains a USB 3.0 port by displaying the SuperSpeed USB Trident logo on its website and the Chromebook itself. (*Id.* ¶¶ 25-26). Plaintiff alleges that Samsung's representations are made to retailers and consumers. (*Id.* ¶¶ 29-32).

Plaintiff purchased the Chromebook in August 2013 from a Best Buy store in Lakeland, Florida. (*Id.* ¶ 38). He alleges that he relied on Samsung's representations that the Chromebook included a SuperSpeed USB 3.0 port when making his purchase. (*Id.* ¶¶ 35-38).

Following his purchase and use of the Chromebook, Plaintiff allegedly discovered that "the Chromebook's purported SuperSpeed port is incapable of achieving the data transfer rates required by the USB 3.0 specification." (*Id.* ¶ 39). Rather, he alleges that "he discovered that the purported SuperSpeed port transfers data at only about 124 Mbit/s—far below the 5 Gbps speed required by the USB 3.0 specification, and even far below the "Hi-Speed" mode required by the USB *2.0* specification." (*Id.*).

Plaintiff alleges that he later discovered that other customers had complained about the same problem with their Chromebooks. (*Id.* ¶ 41). He further alleges that he verified his discovery about the transfer speed using an investigator who conducted numerous tests on a different Series 3 Chromebook. (*Id.* ¶¶ 43-51).

3

Plaintiff filed his original Complaint in this action on June 26, 2014.  (D.E. No. 1, Compl.).  Samsung moved to dismiss on September 5, 2014, (D.E. No. 8), and Plaintiff subsequently filed an Amended Complaint on October 22, 2014.  (Am. Compl.).  Samsung moved again to dismiss on November 21, 2014.  (D.E. No. 16).  Plaintiff opposed the motion to dismiss on January 28, 2015, (D.E. No. 21), and Samsung replied on February 27, 2015, (D.E. No. 25).

Plaintiff's Amended Complaint alleges seven causes of action: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8–1 *et seq.*, and in the alternative, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* and Florida's misleading advertising statute, Fla. Stat. § 817.41; (2) violation of the New Jersey Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. § 56:12–14 *et seq.*; (3) common law fraud and misrepresentation; (4) breach of implied warranties in violation of N.J.S.A. § 12A:2–314 *et seq.*, and in the alternative, Fla. Stat. § 672.314 *et seq.*; (5) declaratory judgment under N.J.S.A. § 2A:16–51 *et seq.*, and in the alternative, Fla. Stat. § 86.011 *et seq.*; (6) breach of express warranty in violation of N.J.S.A. § 12A:2–313, and in the alternative, Fla. Stat. § 672.313(b); and (7) equitable class relief pursuant to Federal Rule of Civil Procedure 23(b)(2).

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleading standard announced by Rule 8 does not require detailed factual allegations; however, it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  In addition, the plaintiff's short and plain statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Finally, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  *Phillips*, 515 F.3d at 245.

## IV.   DISCUSSON

### A.  Plaintiff's Standing to Assert Violations of New Jersey Law

Defendant argues that Plaintiff "lacks constitutional standing to assert claims under New Jersey laws" because "Plaintiff does not claim to reside in New Jersey or claim to have suffered

any injury in New Jersey." (D.E. No. 25, Reply Memorandum of Law in Support of Defendant Samsung Electronics America, Inc.'s Motion to Dismiss the First Amended Class Action Complaint ("Def. Rep. Br.") at 3; D.E. No. 16-1, Memorandum of Law in Support of Defendant Samsung Electronics America, Inc.'s Motion to Dismiss the First Amended Class Action Complaint ("Def. Mov. Br.") at 7). However, the question of whether an injured Plaintiff can bring a claim under the laws of a state in which he does not reside is not a question of Article III constitutional standing, but rather a non-jurisdictional question of statutory standing. *See In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 886 (E.D. Pa. 2012) (holding plaintiffs may have lacked statutory standing to recover under out-of-state statutes, but met Article III requirement "to establish a justiciable case or controversy within the jurisdiction of the federal courts").

Article III standing merely requires that a plaintiff (1) suffered an injury in fact, (2) that is "fairly traceable" to the actions of the defendant, and (3) that is redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Supreme Court's standing cases "confirm that a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335, 352 (2006). The class-action nature of a suit "adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

Samsung has not argued that Plaintiff failed to meet any of the above requirements. Rather, it argues that "because Plaintiff does not claim to reside in New Jersey or claim to have suffered

injury in New Jersey, he lacks constitutional standing to assert claims under New Jersey laws."
(Def. Opp. Br. at 7). Because Plaintiff has Article III standing, the Court declines to dismiss
Plaintiff's New Jersey claims on this ground.

### B. State Fraud Claims

Two counts of Plaintiff's Amended Complaint sound in fraud. Count 1 alleges a violation
of the NJCFA, and in the alternative, the FDUTPA and Florida's misleading advertising statute,
(Am. Compl. ¶¶ 70-105). Count 3 alleges common law fraud and misrepresentation. (*Id.* ¶¶ 107-
117).

#### 1. Choice of Law for State Fraud Claims

The parties dispute which state law should apply to Plaintiff's fraud claims.[2] Samsung
argues that the Court should apply Florida law to Plaintiffs' fraud claims. (Def. Mov. Br. at 7-12).
Plaintiff argues that New Jersey law applies. (D.E. No. 21, Plaintiff's Memorandum of Law in
Opposition to Samsung's Motion to Dismiss the First Amended Class Action Complaint ("Pl. Opp.
Br.") at 7-8). For the reasons below, the Court will apply Florida law to both of Plaintiff's fraud
claims.

A federal court sitting in diversity applies the forum state's choice-of-law rules. *Klaxon
Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). New Jersey has adopted the "most
significant relationship" test for analyzing choice of law, which is outlined in the Restatement
(Second) of Conflict of Laws (1971). *Maniscalo v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206-
07 (3d Cir. 2013) (citing *P.V. v. Camp Jaycee*, 197 N.J. 132, 142–43 (2008)); *see also* Restatement
(Second) of Conflict of Laws § 148 (1971). This test requires a two-step analysis. *P.V.*, 197 N.J.

---

[2] The parties do not, however, appear to dispute that Florida law applies to Plaintiff's claim under
Florida's misleading advertising statute, Fla. Stat. § 817.41, and the Court agrees that Florida law governs
this claim.

at 143.  First, the Court must "determine whether an actual conflict" of law exists.  *Id.*  If no conflict

exists, the law of the forum state applies.  *Id.*  Second, if a conflict exists, "the Court must determine

which state has the 'most significant relationship' to the claim, by 'weigh[ing] the factors set forth

in the Restatement section corresponding to the plaintiff's cause of action.'"  *Snyder v. Farnam

Cos.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011) (quoting *Nikolin v. Samsung Elecs. Am., Inc.*, No.

10-1456, 2010 WL 4116887, at *9 (D.N.J. Oct. 18, 2010)).  Choice-of-law analysis is performed

on a claim-by-claim basis.  *Id.*

Because weighing the Restatement factors requires a factual inquiry, some courts have held

that "it can be inappropriate or impossible for a court to conduct that analysis at the motion to

dismiss stage when little or no discovery has taken place."  *In re Samsung DLP Television Class

Action Litig.*, No. 07–2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009).  Accordingly, some

courts in this district have deferred choice of law analysis until the class certification stage, and

Plaintiff urges the Court to take this approach.  (Pl. Opp. Br. at 9-10).  However, "[s]ome choice

of law issues may not require a full factual record and may be amenable to resolution on a motion

to dismiss."  *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009); *see also,

e.g.*, *Cooper v. Samsung Elec. Am., Inc.*, 374 F. App'x 250, 255 n.5 (3d Cir. 2010); *Arlandson v.

Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 699–700 (D.N.J. 2011).  Here, the Court will conduct

a choice of law analysis because its resolution does not require a full factual record.

The Court first considers whether Florida or New Jersey law governs Plaintiff's statutory

fraud claim (Count 1).  Under the first step of New Jersey's choice of law analysis, the Court must

determine whether conflicts exist between the NJCFA and the FDUTPA.  *P.V.*, 197 N.J. at 143.

The Court determines that a conflict exists.  Specifically, the NJCFA provides for treble damages,

N.J.S.A. § 56:8-19, whereas the FDUTPA only permits recovery of actual damages, Fla. Stat. Ann.

§ 501.211(2).   At least one court in this district has found this conflict between the damages provisions of the NJCFA and the FDUTPA "on its own . . . sufficient to require a choice-of-law analysis." *Dicuio v. Brother Int'l Corp.*, No. 11-1447, 2015 WL 3403144, at \*30 (D.N.J. May 27, 2015).   In addition, the statutes conflict because the NJCFA mandates recovery of attorneys' fees only for prevailing plaintiffs, N.J.S.A. § 56:8-19, whereas the FDUTPA permits either party to recover attorneys' fees, Fla. Stat. § 501.2105.   *Id.*   Because the above provisions yield an actual conflict between the FDUTPA and the NJCFA, the Court does not reach parties' dispute over whether the statutes conflict regarding the reliance requirement.

Under the second step of the choice-of-law analysis, the Court determines that Florida has the most significant relationship to Plaintiff's statutory fraud claim.   To assess which state has the most significant relationship to this claim, the Court must weigh the following factors:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) Conflict of Laws § 148(2).   Here, factors (a), (b), and (e) unambiguously favor the application of Florida law over New Jersey law.   Plaintiff resides in Florida and purchased his Chromebook at a Best Buy in Florida.   (Am. Compl. ¶¶ 1, 38).   Therefore, Florida is the place where Plaintiff allegedly received and relied on Samsung's representations.   *See*

*Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 182 (3d Cir. 2014) ("[F]actors (a) and (b), where the plaintiff acted in reliance and where he received the representations, weigh in favor of applying the laws of putative class members' home states."). It is also the place where Plaintiff's Chromebook was situated at the time of the transaction. In addition, though the parties' have different domiciles, factor (d) also weighs slightly in favor of applying Florida law because "in cases of pecuniary loss . . . [t]he domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant." *See Maniscalo*, 709 F.3d at 208. (internal quotation marks omitted).

The only factor weighing toward the application of New Jersey law is factor (c), as Samsung's headquarters is located in New Jersey and therefore it made its alleged misrepresentations in that state. (Am. Compl. ¶ 6).[3] However, the Third Circuit has held that the "fortuitous location" of a Defendant's New Jersey headquarters alone "does not warrant applying New Jersey law." *Id.* In so holding, the Third Circuit noted that its decision aligned with "the overwhelming majority of courts' application of New Jersey choice-of-law rules under similar circumstances." *Id.* at 209 (collecting cases); *see also Cooper*, 374 F. App'x at 255 ("The transaction in question bears no relationship to New Jersey other than the location of Samsung's headquarters. [Plaintiff's] claim bears the most significant relationship with Arizona, the state in which the television was marketed, purchased, and used."); *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 449 (D.N.J. 2012) ("A majority of courts in this District have held that the mere fact that a company is headquartered in New Jersey or that unlawful conduct emanated from New Jersey will not supersede the numerous contacts with the consumer's home state for purposes of determining which state has the most significant relationship under Restatement § 148(2)."

---

[3] Factor (f) is inapplicable because there is no contract under which Plaintiff is obligated to render performance. *See Grandalski*, 767 F.3d at 182.

(internal quotation marks omitted)).   Accordingly, the Restatement factors weigh toward the application of Florida law to Count 1 of Plaintiff's Amended Complaint.

Next, the Court considers whether New Jersey or Florida governs Plaintiff's common law fraud claim (Count 3).  As a preliminary matter, the Court agrees with several courts in this district that a conflict exists between New Jersey and Florida common law fraud.  *See Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-7849, 2015 WL 1270958, at *11 (D.N.J. Mar. 18, 2015) (holding "that the states' contradictory statutes of limitations create an actual conflict of law"); *see also Mendez v. Avis Budget Grp., Inc.*, No. 11-6537, 2012 WL 1964502, at *2 (D.N.J. May 31, 2012).  Because a conflict exists, the Court must consider which state bears the most significant relationship to Plaintiff's common law fraud claim.  For the reasons stated above regarding Plaintiff's statutory fraud claim, the Court determines that the Restatement factors weigh toward applying Florida law to Count 3 of Plaintiff's Amended Complaint.

Finally, the Court is not persuaded by Plaintiff's argument that the Terms of Use on Samsung's website governs the choice-of-law analysis in this case.[4]  Specifically, Plaintiff cites to a section of the Terms of Use titled "Violation of the Terms of this Site," which contains the following provision:

> Any action related to these Terms will be governed by New Jersey Law and controlling U.S. Law without regard to the choice or conflicts of law provisions of any jurisdiction.  You agree to the jurisdiction of the courts located in Bergen County, New Jersey for the resolution of all disputes arising from or related to these Terms and/or your use of the site.

---

[4] Though the Court is generally confined to considering the complaint's allegations on a motion to dismiss, it may also consider a document that is integral to or explicitly relied on in the complaint without converting the motion to dismiss into a motion for summary judgment.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  Because the Terms of Use is cited and relied on in Plaintiff's Amended Complaint, (Am. Compl. ¶¶ 8-10), it is appropriate for the Court to consider it on Defendant's motion to dismiss.

(D.E. No. 16-3, Terms of Use at 3).  Plaintiff argues in a footnote that his claim is "related to" the Terms of Use because the Terms of Use "discuss[es] 'Materials,' which include the misleading information regarding the Chromebook's USB port that Samsung posted on its website and that Plaintiff viewed."  (Pl. Opp. Br. at 8 n.2).  Plaintiff's interpretation of the Terms of Use is unreasonably broad.  The Terms of Use governs users' interactions with Samsung's website, including use of trademarks and logos, solicited and unsolicited submissions, and liability for third-party content.  (*See* Terms of Use).  Plaintiff's claim is not related to any of the above, and therefore the choice-of-law provision in the Terms of Use does not govern.

In sum, the Court will apply Florida law to the Plaintiff's fraud claims, Counts 1 and 3 of the Amended Complaint.  As a result, it will consider whether Plaintiff has adequately stated a claim under the FDUTPA and Florida common law fraud.[5]

### 2.   The FDUTPA

A claim under the FDUTPA has three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010) (internal quotation marks omitted).

Samsung argues that "Plaintiff's FDUTPA claim fails because he does not adequately allege that Samsung engaged in an unfair or deceptive practice."  (Def. Mov. Br. at 16).  Though Samsung "does not dispute that a reasonable consumer, in viewing Samsung's packaging and advertisements for the Chromebook, would believe that the Chromebook contains a port that meets the requirements set forth in the USB 3.0 specification," it argues that Plaintiff has not "plausibly alleged that the Chromebook's USB 3.0 fails to meet those requirements."  (*Id.*).

---

[5] Because the Court determines that Florida law applies to Plaintiff's fraud claims, it does not assess whether Plaintiff has statutory standing to assert a claim under New Jersey's fraud statute.

The Court disagrees.  Plaintiff's Amended Complaint sets forth numerous, specific allegations that the Chromebook does not meet the requirements of the USB 3.0 specification.  For example, Plaintiff specifically alleges that he "discovered that the [Chromebook's] purported SuperSpeed port is incapable of achieving the data transfer rates required by the USB 3.0 specification."  (Am. Compl. ¶ 39).  He further alleges that "he discovered that the purported SuperSpeed port transfers data at only 124 Mbit/s—far below the 5 Gbps speed required by the USB 3.0 specification."  (*Id.*).  As factual support for these allegations, Plaintiff alleges that an investigator "independently verified" that the Chromebook transferred files at a speed below the USB 3.0 specification by performing "multiple" tests in January and February 2014.  (*Id.* ¶¶ 43-51).

Samsung contends that these allegations are insufficient because they are based on the flawed premise that a SuperSpeed port must transfer data at a rate of 5 Gbit/s.  (Def. Mov. Br. at 1, 17).  It argues that compliance with the USB 3.0 specification cannot be determined by reference to a data transfer speed, but rather must be determined by reference to the Implementers Forum standardized testing criteria.  (*Id.* at 1).  Samsung argues that, as a result, Plaintiff "had no 'reasonable expectation' that the Chromebook's USB 3.0 port . . . would transfer data at a speed of 5 Gbit/s."  (*Id.* at 17).  The standard for compliance with the USB 3.0 specification is a factual question that the Court declines to address at this stage.  *See Flora v. Cnty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015) (holding that on a motion to dismiss, "[t]he district court may not make findings of fact and, insofar as there is a factual dispute, the court may not resolve it").  Samsung admits that it represented that the Chromebook has a USB 3.0 SuperSpeed port, and Plaintiff has alleged that this representation led him to reasonably expect that the port would transfer data at certain speeds consistent with the USB 3.0 specification.  (Am. Compl. ¶ 94).  For the purposes of

a motion to dismiss, Plaintiff's detailed allegations that the USB 3.0 specification is not met are sufficient.  The Court denies Samsung's motion to dismiss Plaintiff's FDUTPA claim.

3.  Common Law Fraud

Count 3 of Plaintiff's Amended Complaint alleges fraud and misrepresentation.  (Am. Compl. ¶¶ 109-17).  Defendant argues that Plaintiff's common law fraud claim is barred by the economic-loss rule and that Plaintiff fails to plead fraud with sufficient particularity.  (Def. Mov. Br. at 18-23).  Plaintiff responds that the economic-loss rule does not bar his claim and argues that he pled fraud with sufficient particularity.  (Pl. Opp. Br. at 15-19).

The parties do not dispute that Florida recognizes an economic-loss rule, but they disagree about its breadth.[6]  The economic-loss rule "sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses."  *Tiara Condo Ass'n v. Marsh & McLennan Cos.*, 110 So.3d 399, 401 (Fla. 2013).  Economic loss consists of "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to the other property."  *Id.*  Defendant argues that Florida's economic-loss rule applies to claims of fraudulent inducement and misrepresentation, thus barring Plaintiff's claim in this case.  (Def. Mov. Br. at 19).  Plaintiff, by contrast, argues that the economic-loss doctrine does not bar such claims.  (Pl. Opp. Br. at 16).

The Florida Supreme Court recently revisited the scope of its economic-loss doctrine.  *See Tiara*, 110 So.3d at 403-07.  In that case, Tiara, a condominium association, retained an insurance broker to secure condominium insurance coverage.  *Id.* at 400.  The broker secured a windstorm policy that contained a loss limit of approximately fifty million dollars, but assured Tiara that the

---

[6] The Court notes at the outset that Florida's economic-loss doctrine does not bar a claim under the FDUTPA.  *Delgado v. J.W. Courtesy Pontiac GMC-Truck*, 693 So.2d 602, 609-11 (Fla. Dist. Ct. App. 1997).

loss limits coverage was "per occurrence," rather than in the aggregate. *Id.* When Tiara sustained damage from two separate hurricanes and sought to recover over one hundred million dollars, the insurance company claimed that the fifty-million-dollar-aggregate-loss limit applied. *Id.* Tiara settled with the insurance company for eighty nine million dollars, but sued the insurance broker for the excess amount it spent. *Id.* The Eleventh Circuit certified to the Florida Supreme Court the question of whether the economic-loss rule prohibited recovery, or whether an insurance broker falls within the "professional services" exception to the economic-loss rule, which would permit Tiara to proceed with its claims. *Id.* at 401. The Florida Supreme Court narrowed the scope of the economic-loss doctrine, holding that "the economic loss rule applies only in the products liability context" and that it therefore did not even need to consider the scope of the professional services exception. *Id.* at 407.

Relying on two supporting cases, Defendant argues that "Florida district courts have interpreted the Florida Supreme Court's decision in *Tiara* as eliminating any exceptions to the economic loss rule for fraudulent inducement and misrepresentation claims." (Def. Mov. Br. at 19). First, Defendant cites *Aprigliano v. American Honda Motor Co.*, 979 F. Supp. 2d 1331, 1337-39 (S.D. Fla. 2013). (*Id.*). There, the court held that Plaintiff's negligent misrepresentation claim was barred by the economic-loss doctrine because it "is dependent on the same fundamental allegations contained in the breach of warranty claim—specifically, that [defendant] breached the terms of its Warranties by providing Plaintiffs with defective motorcycles." *Aprigliano*, 979 F. Supp. 2d at 1338. Defendant also relies on *Burns v. Winnebago Industries, Inc.*, No. 13-1427, 2013 WL 4437246, at *1-4 (M.D. Fla. Aug. 16, 2013), in which the court applied the economic-loss doctrine to claims for negligent misrepresentation and fraudulent concealment. (Def. Mov. Br. at 19). In *Burns*, the court accepted the defendant's argument that the plaintiff's claims were

"simply product liability claims re-titled as claims for negligent misrepresentation and fraudulent concealment." *Burns*, 2013 WL 4437246. at *3. The court appeared to acknowledge that exceptions to the economic-loss rule for fraudulent inducement and negligent misrepresentation could apply, but held that they did not apply "under the facts alleged" because the claims were essentially products liability claims in disguise. *Id.* It noted that "[t]o hold otherwise would allow the economic loss rule to be manipulated such that any time a purchaser received a defective product that did not cause any injuries or damage to other property, such a purchaser could assert claims for negligent and fraudulent concealment regarding the defect to avoid the economic loss rule." *Id.* at *4.

Plaintiff argues that neither *Aprigliano* nor *Burns* held that *Tiara* eliminated the exception to the economic-loss rule for fraudulent inducement—rather, each court held that the exception did not apply in that specific case. (Pl. Opp. Br. at 17). Plaintiff urges the Court to rely instead on *In re MyFord Touch Consumer Litigation*, 46 F. Supp. 3d 936, 965 (N.D. Cal. 2014). (*Id.*). Applying Florida law, the court in *In re MyFord* held that the plaintiff's claims under Florida's consumer protection statute and fraudulent concealment were not barred by the economic-loss doctrine because they were "based on a duty independent of any contract—*i.e.*, a statutory duty, a duty not to fraudulently induce another to enter a contract, and a duty to disclose." 46 F. Supp. 3d at 964. The court relied on *Tiara* and noted that *Burns* "made no ruling that *all* claims for fraud are necessarily barred by the rule." *Id.* at 965.

Based on the above, it appears that Defendant's contention that *Tiara* eliminated any exception to the economic-loss doctrine for claims of fraudulent inducement or misrepresentation is not supported by the relevant law. However, such claims may be barred by the economic-loss doctrine when they sound in products liability. *See Burns*, 2013 WL 4437246, at *2-4. The court

16

in *Aprigliano* recognized this, as it characterized *Burns* as "holding the exceptions to the economic

loss rule for fraudulent inducement and negligent misrepresentation did not apply ***in the products***

***liability context*** post-*Tiara*." *Aprigliano*, 979 F. Supp. 2d at 1338 (emphasis added).  Thus, the

operative question is whether Plaintiff's common law fraud claim arises "in the products liability

context." *See id.* at 1336.

The Court concludes Plaintiff's common law fraud claim arises outside of the products

liability context, and therefore is not barred by the economic-loss doctrine. *Tiara* reaffirmed that

the "products liability context" refers to "cases involving a product which damages itself by reason

of a defect in the product." *Tiara*, 110 So.3d at 407.  Plaintiff's allegation is not that the

Chromebook suffers a defect—whether in design, manufacturing, or otherwise.  Rather, Plaintiff

alleges that "Samsung specifically marketed, advertised and represented to consumers" that the

Chromebook contains a USB port that it does not have.  (Am. Compl. at 2).  This case is therefore

distinguishable from *Burns*, where the plaintiff discovered dangerous corrosion on his RV, *see*

2013 WL 4437246, at *1, and *Aprigliano*, where the plaintiffs alleged dangerously "defective

design and machining," *see* 979 F. Supp. 2d at 1333.  Because the Court determines that this action

sounds in consumer fraud—and not in products liability—Florida's economic-loss doctrine does

not bar Plaintiff's common law fraud claim.

Samsung also argues that Plaintiff's common law fraud claim is not pled with sufficient

particularity.  (Def. Mov. Br. at 20).  Under Florida common law, a plaintiff pleading fraudulent

inducement must allege that: "(a) the representor made a misrepresentation of a material fact; (b)

the representor knew or should have known of the falsity of the statement; (c) the representor

intended that the representation would induce another to rely and act on it; and (d) the plaintiff

suffered injury in justifiable reliance on the representation." *Joseph v. Liberty Nat'l Bank*, 873 So.2d 384, 388 (Fl. Dist. Ct. App. 2004).

The Court determines that Plaintiff has adequately stated a claim for fraud.  First, Plaintiff alleges that Samsung made a misrepresentation of fact by advertising that the Chromebook contains a 3.0 USB SuperSpeed port.  (Am. Compl. ¶ 72).  As discussed above with respect to Plaintiff's FDUTPA claim, *see supra* Section IV.B.2, this allegation is sufficient to survive a motion to dismiss.  Second, Plaintiff alleged that Samsung knew or should have known the falsity of this statement.  (*Id.* ¶¶ 84-88).  Though Defendant argues that Plaintiff's allegations of knowledge are insufficient, the Court disagrees.  Plaintiff specifically alleged that Samsung received numerous complaints about the 3.0 USB port speed directly from customers and that it knew of online technical reviews criticizing the Chromebook for that reason.  (*Id.* ¶ 88). Furthermore, Plaintiff alleges that Samsung "had actually tested the USB 3.0 port before releasing the Chromebook, as required by the USB Implementer's Forum."  (*Id.*).  This allegation that Defendant was required to test the product distinguishes this case from those cited by Defendant, where there were mere allegations, without factual support, that a defendant had tested the product. *See, e.g.*, *Morris v. BMW of N. Am., LLC*, No. 13-4980, 2014 WL 793550, at *7 (D.N.J. Feb. 26, 2014).  Third, Plaintiff alleged that Samsung intended that its representations would induce reliance and actions by consumers, (Am. Compl. ¶ 89).  And finally, Plaintiff alleges that he suffered an injury in justifiable reliance on the representation.  (*Id.* ¶¶ 95-99).  Accordingly, Plaintiff has sufficiently pled common law fraud, and Defendant's motion to dismiss Count 3 of Plaintiff's Amended Complaint is denied.

### 4.  Florida's Misleading Advertising Statute[7]

---

[7] The Court notes that, as with the FDUTPA, Florida's economic-loss rule cannot bar a claim under the state's misleading advertising statute.  The economic-loss rule "does not bar statutory causes of action, particularly when the statutory language providing the cause of action makes clear that the remedy is in

Count 1 of Plaintiff's Amended Complaint also pleads a violation of Florida's misleading advertising statute, which provides:

> It shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses.

Fla. Stat. § 817.41(1).   In addition, "[a]lthough the statute does not say it, the case law that has developed since the adoption of section 817.41(1) requires one seeking to maintain a civil action for violation of the statute to prove each of the elements of common law fraud in the inducement, including reliance and detriment, in order to recover damages." *Joseph*, 873 So.2d at 388.   Thus, to state a claim under the statute, a plaintiff must allege the elements of common law fraud plus reliance on the alleged advertising. *Black Diamond Props., Inc. v. Haines*, 69 So.3d 1090, 1094-95 (Fla. Dist. Ct. App. 2011).

The parties agree that Plaintiff's claim under Florida's misleading advertising statute rises and falls with Plaintiff's common law fraud claim.  (Def. Mov. Br. at 18; Pl. Opp. Br. at 15).  As discussed above, *see supra* Section IV.B.3, Plaintiff has alleged each of the elements of common law fraud in the inducement.   In addition, Plaintiff has alleged that he relied on the misleading advertising.  (Am. Compl. ¶¶ 33-38).  As a result, Defendant's motion to dismiss Plaintiff's claim under Florida's misleading advertising statute is denied.

---

addition to other available remedies." *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So. 2d 489, 499 (Fla. Dist. Ct. App. 2001) (internal citations omitted).  Florida's misleading advertising statute explicitly states that "[t]his provision is in addition to any other remedies prescribed by law."  Fla. Stat § 817.41(6).

**C. TCCWNA**

Count 2 of the Amended Complaint alleges a violation of the New Jersey TCCWNA.  (Am. Compl. ¶¶ 106-08).  Under the TCCWNA, a seller cannot offer or enter into any "written contract" that "violates any clearly established legal right of a consumer."  N.J.S.A. § 56:12-15.  The statute provides in relevant part:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

*Id.*

Samsung argues that "New Jersey's choice-of-law principles also prevent Plaintiff from asserting a claim under the TCCWNA."  (Def. Mov. Br. at 12).  It argues that an "actual conflict" exists between New Jersey and Florida law regarding this claim "because Florida does not have a comparable consumer protection statute."  (*Id.* at 13).  Plaintiff does not directly address this argument, but appears to acknowledge that the Court should only consider the merits of the claim "if New Jersey law applies."  (Pl. Opp. Br. at 10).

Because Florida does not have a statute that is comparable to the TCCWNA, an actual conflict exists between Florida and New Jersey law regarding this claim.  To determine which state bears the most significant relationship to this claim, the Court must consider the factors in the Restatement (Second) of Conflict of Laws § 188, which governs conflict-of-law analysis for contract claims.  *Feldman v. Mercedes-Benz USA, LLC*, No. 11-0984, 2012 WL 6596830, at *7-8 (D.N.J. Dec. 18, 2012).  This section requires courts to consider: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject

20

matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties."  Restatement (Second) of Conflict of Laws § 188; *see also Feldman*, 2012 WL 6596830, at *8.

Based on these factors, Florida bears the most significant relationship to Plaintiff's TCCWNA claim.  As discussed in detail above, *see supra* Section IV.B.1, with respect to Factors 1 and 3, Florida is alleged place of contracting and performance.  With respect to Factor 4, Florida is also the location of the subject matter of the alleged contract, Plaintiff's Chromebook.  Factor 2 is inapplicable because no alleged negotiation occurred.  Thus, only factor 5 does not clearly weigh toward applying Florida law because Samsung is located in New Jersey.  However, this is not sufficient to outweigh the remaining factors, and therefore the Court determines that Florida bears the most significant relationship to this claim.  As a result, Plaintiff's TCCWNA claim must be dismissed.

### D.  Breach of Implied Warranty

Count 4 of the Amended Complaint alleges breach of implied warranties in violation of N.J.S.A. § 12A:2-314 *et seq.* and, in the alternative, Fla. Stat. § 672.314 *et seq.*  (Am. Compl. ¶¶ 118-41).

#### 1.   Choice of Law for Breach of Implied Warranty

Defendant argues that Florida law should apply to Plaintiff's implied warranty claim.  (Def. Mov. Br. at 19).  As discussed above, the Court must consider first whether a conflict exists and, if yes, which state bears the most significant relationship to Plaintiff's claim.  *P.V.*, 197 N.J. at 143.  First, the Court determines that a conflict exists between New Jersey and Florida law with respect to the implied warranty of merchantability because Florida law requires privity of contract and New Jersey law does not.  *See Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 327-28 (D.N.J.

2014) (distinguishing breach of implied warranty under New Jersey law from Ohio, California, and Florida law); *see also Morano v. BMW of N. Am.*, 928 F. Supp. 2d 826, 835-38 (D.N.J. 2013) (discussing privity requirement for breach of implied warranty under Florida law).  Accordingly, the Court must consider which state bears the most significant relationship to Plaintiff's claim under the factors in the Restatement (Second) of Conflict of Laws § 188, which applies to implied warranty claims.  As with Plaintiff's TCCWNA claim, Florida bears the most significant relationship to Plaintiff's breach of implied warranty claim.  Florida is the location where the warranty was contracted and performed.  It is also the location of the subject matter of the implied warranty and Plaintiff's domicile.  Thus, the Restatement factors favor the application of Florida law to this claim.

### 2.   Analysis of Breach of Implied Warranty Claim

Defendant argues that Plaintiff's implied warranty claim fails because he lacks privity and because he has not alleged that the Chromebook is not merchantable.  (Def. Mov. Br. at 25-27).  Plaintiff responds that Defendant mischaracterizes the "merchantability" requirement and that privity is met.  (Pl. Opp. Br. 19-22).  He does not dispute that privity is a requirement under Florida law.  For the reasons below, the Court agrees with Defendant that Plaintiff's implied warranty claim fails for lack of privity.

Defendant argues that Plaintiff's implied warranty claim fails for lack of privity because Plaintiff purchased his Chromebook from Best Buy—not Samsung directly—and therefore privity does not exist.  (Def. Mov. Br. at 25).  Plaintiff responds that "Plaintiff has pled privity of contract by alleging facts sufficient to satisfy the agency doctrine."  (Pl. Opp. Br. at 22).  Plaintiff points to his allegations that Best Buy and other retailers are agents of Samsung, as well as his allegations that representations made by these retailers about the Chromebook were directed and authorized

by Samsung.  (Pl. Opp. Br. at 22); *see also* Am. Compl. ¶¶ 29-31, 81, 125-27).  Plaintiff proceeds

to argue that warranty claims "will not be dismissed under Florida law where the consumer

purchased from the defendant's agent."  (Pl. Opp. Br. at 22).

However, the case that Plaintiff relies on to support this argument, *Bland v. Freightliner*,

206 F. Supp. 2d 1202 (M.D. Fla. 2002), does not support finding privity via agency in this case.

As an initial matter, the Court notes that *Bland* did not consider privity in the breach of implied

warranty context.  Nevertheless, the court in *Bland* found privity between plaintiffs and a

defendant manufacturer where there was a sufficient "relation" between the parties, even though

the plaintiffs did not purchase the product at issue from the manufacturer itself.  *Bland*, 206 F.

Supp. 2d at 1207.  For example, the *Bland* plaintiffs' sales contract with the dealer identified the

defendant and required a signature from the defendant or an authorized representative.  *Id.*  In

addition, portions of the warranty in *Bland* used the defendant's name interchangeably with the

agent, and the court noted that plaintiffs suggested that, without the defendant, the agent would

cease to exist.  *Id.*  Plaintiff has pled no such facts here, and has pointed to no case where a court

has found privity in situations where a plaintiff purchased the product at issue at a commercial

store like Best Buy.  As Defendant notes, at least one Florida court found no privity between

plaintiffs and a defendant authorized dealer where the manufacturer exercised significantly more

control over the dealer than Samsung allegedly exercised over Best Buy.  *See, e.g.*, *Ocana v. Ford

Motor Co.*, 992 So.2d 319, 327 (Fla. Dist. Ct. App. 2008).  As a result, Plaintiff's argument that

privity exists because Best Buy is Samsung's agent is unavailing, and therefore Plaintiff has not

adequately stated a claim for breach of implied warranty of merchantability under Florida law.

Because Plaintiff's implied warranty claim fails based on lack of privity, the Court does not address

Defendant's argument regarding merchantability.  Count 4 of Plaintiff's Amended Complaint is dismissed.

### E. Breach of Express Warranty

Count 6 of Plaintiff's Amended Complaint alleges breach of express warranty in violation of N.J.S.A. § 12A:2-313 or, alternatively, Fla. Stat. § 672.313(b).  (Am. Compl. ¶¶ 146-53).

#### 1.   Choice of Law for Breach of Express Warranty

Defendant does not urge the Court to apply either New Jersey or Florida law to Plaintiff's breach of express warranty claim.  (*See* Def. Mov. Br. at 27-28).  Plaintiff argues that he has stated a claim under either state's law.  (Pl. Opp. Br. at 23).  For the reasons below, the Court determines that no conflict exists between the state's laws, and therefore the law of the forum state, New Jersey, will apply.  *P.V.*, 197 N.J. at 143.

To state a claim for breach of express warranty under New Jersey law, a plaintiff must allege (1) an affirmation of fact, promise, or description about the product; (2) the affirmation of fact, promise, or description became part of the basis of the bargain for the product; and (3) the product ultimately did not conform to the affirmation of fact, promise, or description.  *In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*, 588 F. App'x 171, 175 (3d Cir. 2014) (citing N.J.S.A. § 12A:2–313).  Moreover, New Jersey law requires that guarantees of future performance be specific.  *Id.* (citing *Herbstman v. Eastman Kodak Co.*, 342 N.J. 1, 12 (N.J. 1975)).  "[T]he seller need not use formal words such as 'warrant' or 'guarantee' or have a specific intention to make a warranty . . . .  But that does not mean [that a plaintiff] is relieved from identifying the affirmation of fact, promise, or description he contends constitutes the express warranty under New Jersey law."  *Id.* (quoting N.J.S.A. § 12A:2–313).  In addition, proximate cause and damages are required.  *Marcus v. BMW of N. Am.*, 687 F.3d 583, 600 n.8 (3d Cir. 2012).  Finally, New

Jersey has adopted the notice requirement of the Uniform Commercial Code ("UCC"), which requires statutory notice to the seller as a "condition precedent to filing any suit for breach of warranty." *Dicuio*, 2012 WL 3278917, at *11 (citation omitted).

The Florida law governing express warranties provides that an express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Fla. Stat. § 672.313.  The statute further provides that "[it] is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that the seller have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." *Id.*  Accordingly, Florida courts have interpreted the statute to require that a plaintiff pleading breach of express warranty allege "(1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty." *Bohlke v. Shearer's Foods, LLC*, No. 14-80727, 2015 WL 249418, at *10 (S.D. Fla. Jan. 20, 2015) (internal citations and quotation marks omitted).

The Court determines that there is no actual conflict between Florida and New Jersey law with respect to breach of express warranty.  As a result, the Court will apply the law of the forum state, New Jersey, to this claim.

2.   Analysis of Breach of Express Warranty Claim

Defendant argues that Plaintiff's breach of express warranty claim must be dismissed because there is an express disclaimer in the Chromebook Limited Warranty and because Plaintiff failed to provide pre-suit notice to Defendant as required by both the UCC and the Chromebook's

limited warranty. (Def. Mov. Br. at 27-30). Plaintiff responds that Samsung did not effectively disclaim its express warranty and that pre-suit notice was not required. (Pl. Opp. Br. at 24-25). For the reasons below, the Court determines that Plaintiff's breach of express warranty claim fails because Plaintiff did not provide Samsung with the requisite pre-suit notice.

As discussed above, New Jersey has adopted the UCC's notice requirement for express warranty claims. *Dicuio*, 2012 WL 3278917, at *11; *see also Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2011 WL 2470625, at *3 (D.N.J. June 20, 2011). The notice requirement provides that "[w]here a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.J.S.A. § 12A:2–607(3)(a). Plaintiff argues that he was not required to provide Samsung with notice because "notice of breach of either express or implied warranty is not required in an action against a remote manufacturer who is not the immediate seller of a product." (Pl. Opp. Br. at 25 (quoting *Coyle v. Hornell Brewing Co.*, No. 08-2797, 2010 WL 2539386, at *6 (D.N.J. June 15, 2010)).

The parties do not dispute that Plaintiff purchased the product at issue from a retail store and that the Chromebook's Limited Warranty provides that "[t]o receive warranty service, you must (1) first follow the procedures outlined below . . . and (2) if these procedures do not resolve the problem, contact Samsung at the number provided below." (*See* D.E. No. 16-4, Samsung Mobile Computer Limited Warranty ("Limited Warranty") at 1).[8]  Though Samsung argues that

---

[8] As noted above, *supra* n. 4, a court reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based on those documents, and matters of public record. *See in re Bayside Prison Litig.*, 190 F. Supp. 2d 755, 760 (D.N.J. 2002). Though Plaintiff did not attach the Limited Warranty to the Amended Complaint, the Amended Complaint specifically references warranty agreements and Plaintiff's claims are based on it. Accordingly, it is appropriate for the Court to consider the Limited Warranty in deciding Defendant's motion to dismiss.

notice is not required because Plaintiff purchased the Chromebook at Best Buy and Samsung is merely a remote manufacturer, this argument ignores that Third Circuit has expressly upheld the notice requirement against a remote manufacturer where, as here, the warranty itself contains a notice requirement. *See Cooper*, 374 F. App'x at 253. In *Cooper*, the plaintiff bought a Samsung product in a retail store. *Id.* at 251. The warranty for the product at issue in *Cooper* stated that "[t]o receive warranty service, the purchaser must contact SAMSUNG for a problem determination and service procedures." *Id.* at 253. The Third Circuit determined that because "it is undisputed that Cooper failed to provide the requisite notice to Samsung within one year of the date of his purchase of the 1090p television, Samsung is not obligated to perform under the Warranty." *Id.* The facts of *Cooper* align with the facts of this case, and Plaintiff has not directed the Court to any case where notice was unnecessary even though the express warranty explicitly required it. Here, the express warranty includes a notice requirement, (Limited Warranty at 1), and Plaintiff has not alleged that he contacted Samsung prior to bringing his claim. As a result, Count 6 of Plaintiff's Amended Complaint is dismissed *with prejudice*, and the Court does not consider the parties' other arguments regarding this claim.

### F. Declaratory Relief and Equitable Relief

Count 5 of Plaintiff's Amended Complaint seeks declaratory judgment that the purported USB 3.0 port in the Samsung Chromebooks at issue does not comply with the USB 3.0 specification. (Am. Compl. ¶¶ 142-45). Count 7 of the Amended Complaint seeks equitable class relief pursuant to Fed. R. Civ. P. 23(b)(2). (Am. Compl. ¶¶ 154-58).

Samsung argues that Plaintiff cannot seek declaratory or injunctive relief because (1) he has not adequately pled any underlying cause of action, and (2) Plaintiff "cannot show a likelihood that he will suffer future injury from Samsung's purported conduct [because] Plaintiff has not

alleged that he intends to purchase another Chromebook." (Def. Mov. Br. at 30). Because Plaintiff has adequately pled at least one underlying cause of action, it only addresses Defendant's argument that injunctive relief is barred because Plaintiff has not alleged the likelihood of future injury.[9]

Samsung's argument relies on the Third Circuit's opinion in *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 222-27 (3d Cir. 2012). (*Id.*). In *McNair*, the Third Circuit held that when "prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct." 672 F.3d at 223 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). "In the class action context, that requirement must be satisfied by at least one named plaintiff." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). Moreover, there must be a real and immediate threat of injury, and "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* (internal citations and quotation marks omitted). Accordingly, in *McNair*, the Third Circuit held that the named plaintiffs, former magazine subscribers, lacked standing to sue for class-wide injunctive relief where there was no allegation that any named plaintiff was likely to re-subscribe and consequently suffer the alleged injury again in the future. *Id.* at 222-27.

Plaintiff attempts to distinguish *McNair* on two grounds. First, Plaintiff argues that, unlike in *McNair*, Plaintiff has alleged a reasonable likelihood of future injury. (Pl. Opp. Br. at 27 (citing Am. Compl. ¶ 55)). Second, Plaintiff argues that, unlike in *McNair*, Plaintiff is not a "former customer," but rather a present owner of a Samsung Chromebook and a "current recipient of

---

[9] Though it is not entirely clear, the Court interprets Samsung's brief as arguing that only injunctive relief (and not declaratory relief) is barred by Plaintiff's insufficient pleading regarding future conduct. (Def. Mov. Br. at 30). Accordingly, Plaintiff's claim for declaratory relief (Count 5) survives.

Samsung's advertising campaign and representations regarding the USB capabilities of its products." (*Id.* (citing Am. Compl. ¶¶ 55, 101)).

Neither argument is meritorious. First, though Plaintiff argues in his brief that he has alleged the likelihood of future injury, the allegation that Plaintiff relies on is inadequate. Plaintiff alleges that "Plaintiff intends to purchase Samsung products in the future, and therefore is likely to be deceived again by any misrepresentations with respect to the USB capabilities of such Samsung products." (Am. Compl. ¶ 55). However, this allegation merely states that Plaintiff intends to purchase Samsung products generally in the future—not that Plaintiff intends to purchase the Series 3 Chromebook in the future. As Defendant points out, Plaintiff's allegation that he intends to purchase Samsung products in the future "could include anything from televisions and cell phones to washing machines." (Def. Rep. Br. at 15). Plaintiff has not alleged that he will be harmed a second time by the misrepresentation that the Series 3 Samsung Chromebook contains a USB 3.0 port. His general allegation is insufficient to plead a recurrence of the specific injury that Plaintiff has alleged.

Plaintiff's second argument—that *McNair* is distinguishable because Plaintiff is a current owner, not a former customer—is also unavailing. In *Dicuio*, 2012 WL 3278917, at *15, the court held that "[w]hile *McNair* involved former customers, and the plaintiffs here still own and use their printers, I find the circuit's holding nonetheless dispositive here." 2012 WL 3278917, at *15. The Court agrees. "As framed by *McNair*, the standing question is whether a putative class representative has alleged that he or she will be harmed, a second time, *by the misrepresentation*, not whether he or she will be harmed by the operation of the product itself." *Id.* There is no basis for the Court to determine that Plaintiff will be harmed by continued exposure to the alleged misrepresentations as a "current recipient of Samsung's advertising campaign and representations

regarding the USB capabilities of its products." (*See* Pl. Opp. Br. at 27); *see also Robinson v. Hornell Brewing Co.*, No. 11-2183, 2012 WL 1232188, at *5 (D.N.J. Apr. 11, 2012) ("merely seeing a label that Plaintiff believes is incorrect or that he believes could be misleading to others is not the kind of concrete adverse effect or injury necessary to create a cognizable case or controversy required by Article III."[10])

As the Third Circuit held in *McNair*, "the law accords people the dignity of assuming that they act rationally, in light of the information that they possess." *McNair*, 672 F.3d at 225. Accordingly, there is no reason for the Court to conclude—based on Plaintiff's allegation or anything else—that there is a reasonable likelihood that Plaintiff will suffer a future injury. As a result, Plaintiff's claim for injunctive relief (Count 7) must be dismissed.

## V.   CONCLUSION

For the reasons above, it is on this 29th day of June 2015,

**ORDERED** that Samsung's motion to dismiss Plaintiff's Amended Complaint, (D.E. No. 16), is granted *without prejudice* with respect to Counts 2, 4, and 7; and it is further

**ORDERED** that Samsung's motion to dismiss Plaintiff's Amended Complaint, (D.E. No. 16), is granted *with prejudice* with respect to Count 6; and it is further

**ORDERED** that Samsung's motion to dismiss Plaintiff's Amended Complaint, (D.E. No. 16), is denied with respect to the remaining counts; and it is further

**ORDERED** that the Clerk of the Court shall terminate D.E. Nos. 8 and 16.

**SO ORDERED.**

*/s Esther Salas*

**Esther Salas, U.S.D.J.**

---

[10] Though the plaintiff in *Robinson* was a former customer, the reasoning behind the court's decision applies here, where the alleged basis for a future injury was continued exposure to misrepresentations.