<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SCOTT MILLER, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>    Defendant. | Civil Action No. 14-4076 (ES) (MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

    Pending before the Court is Defendant Samsung Electronics America, Inc.'s motion to dismiss Count Four of Plaintiff's Second Amended Class Action Complaint, or, in the alternative, to dismiss Counts One through Three. (D.E. No. 46). Plaintiff opposes the motion. (D.E. No. 47). The Court decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Defendant's motion to dismiss Count Four is GRANTED without prejudice to Plaintiff asserting the dismissed claim in state court.

**I.  BACKGROUND**

    Plaintiff Scott Miller brings this action, on behalf of himself and similarly situated individuals, alleging misrepresentations relating to Defendant's Series 3 Chromebook laptop. (D.E. No. 41-1, Second Amended Complaint ("Sec. Am. Compl.")). A full recitation of the factual background can be found in the Court's June 29, 2015 Opinion. (D.E. No. 38, June 29, 2015 Opinion ("Op.")). For the purposes of the instant motion, the Court will only address the relevant facts.

1

Plaintiff is a Florida resident. (Sec. Am. Compl. ¶ 1). In the summer of 2013, Plaintiff was interested in purchasing a new laptop that was highly portable. (*Id.* ¶ 33). While researching potential options, Plaintiff discovered Defendant's Series 3 Chromebook. (*Id.* ¶¶ 33, 34). Initially, Plaintiff was concerned about the lack of built-in storage, but this concern was alleviated by Defendant's representation that the Chromebook contained a USB 3.0 SuperSpeed port. (*Id.* ¶ 35).

On August 15, 2013, Plaintiff purchased a Series 3 Chromebook in Florida. (*Id.* ¶ 38). After making the purchase, Plaintiff discovered that the SuperSpeed port was "incapable of achieving the data transfer rates required by the USB 3.0 specifications." (*Id.* ¶ 39). According to Plaintiff, had he known that the Chromebook's USB was not in compliance with the USB 3.0 specifications, he would not have purchased the Series 3 Chromebook. (*Id.* ¶ 52).

On June 26, 2014, Plaintiff filed his original Complaint. (D.E. No. 1). Defendant moved to dismiss on September 5, 2014. (D.E. No. 8). Plaintiff subsequently filed an Amended Complaint on October 22, 2014. (D.E. No. 15). Defendant again moved to dismiss on November 21, 2014. (D.E. No. 16).

On June 29, 2015, the Court granted in part and denied in part Defendant's motion to dismiss Plaintiff's Amended Complaint. (*See* Op.). In particular, the Court dismissed Plaintiff's claim for injunctive relief. (*Id.* at 30). Essentially, the Court held that Plaintiff's Amended Complaint did not allege that Plaintiff intended to purchase a Series 3 Chromebook in the future, thus failing to allege that he would be injured by Defendant's misrepresentation. (*Id.* at 29). Moreover, the Court also held that there was no basis to determine that Plaintiff would suffer continued exposure to Defendant's alleged misrepresentations. (*Id.* at 29-30).

Plaintiff subsequently filed the Second Amended Complaint on August 3, 2015. (D.E. No. 41). Plaintiff's Second Amended Complaint alleges four causes of action: (1) violation of the

2

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.* and Florida's misleading advertising statute, Fla. Stat. § 817.41; (2) fraud and misrepresentation under Florida common law; (3) declaratory judgment, Fla. Stat. § 86.011 *et seq.*; and (4) class equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2).  (Sec. Am. Compl. ¶¶ 70-121).

On September 18, 2015, Defendant moved to dismiss the Second Amended Complaint. (D.E. No. 46).  Plaintiff opposes the motion.  (D.E. No. 47).  The Court ordered supplemental briefing.  (D.E. Nos. 53, 54).  The motion is now ripe for adjudication.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleading standard of Rule 8 does not require detailed factual allegations, but it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  In addition, the plaintiff's "short and plain statement of the claim" must "give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation omitted).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In evaluating the sufficiency of a complaint, a court "must accept all well-pleaded allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Furthermore, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Porher*, 363 F.3d 229, 235 (3d Cir. 2004)).

## III.   DISCUSSION

Defendant contends that Count Four of Plaintiff's Second Amended Complaint should be dismissed with prejudice. (D.E. No. 46-1, Memorandum of Law in Support of Defendant Samsung Electronics America, Inc.'s Motion to Dismiss ("Def. Mov. Br") at 8). According to Defendant, plaintiffs in consumer class actions who are on notice of alleged deficiencies or misrepresentations do not have Article III standing to seek injunctive relief. (*Id.*). In the alternative, Defendant seeks dismissal of Counts One through Three for failure to state a claim. (*Id.* at 12-15).

Article III of the United States Constitution limits the scope of federal courts to actual cases or controversies. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). To establish Article III standing, a plaintiff must demonstrate "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016). "When . . . prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct." *McNair v.*

4

*Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). In a class action case, at least one plaintiff must establish standing. *Id.*

Defendant contends that Plaintiff lacks Article III standing for two reasons. First, according to Defendant, "having already purchased a Series 3 Chromebook and being aware of its alleged deficiencies, Plaintiff cannot adequately claim that he is likely to suffer future injury . . . again." (Def. Mov. Br. at 7). In particular, Defendant argues that Plaintiff is on notice of the Chromebook's alleged deficiencies, and thus, it would be irrational for him to buy it again. (*Id.* at 9). In support, Defendant relies on *McNair v. Synapse Grp. Inc.*, which stated that "the law accords people the dignity of assuming that they act rationally, in light of the information they possess." 672 F.3d 213, 225 (3d Cir. 2012).

In response, Plaintiff contends that the threatened invasion of the rights conferred by the Florida Deceptive and Unfair Trade Practices Act create the injury for purposes of Article III standing. (D.E. No. 47-1, Plaintiff's Memorandum of Law in Opposition to Samsung's Motion to Dismiss ("Pl. Opp. Br.") at 11). According to Plaintiff, the invasion of his statutory right to receive truthful information from sellers about their products constitutes injury. (*Id.* at 2). Moreover, Plaintiff contends that he need not allege that he is likely to suffer the same injury, but rather that he will be wronged in a similar way. (D.E. No. 54-1, Plaintiff's Supplemental Brief ("Pl. Supp. Br.") at 3).

Defendant relies heavily on *McNair* in support of its position. In *McNair*, former customers sought injunctive relief against a magazine subscription marketer for its deceptive business practices. *McNair*, 672 F.3d at 219. In particular, the defendant magazine subscription marketer, Synapse, provided trial offers that evolved into long-term subscriptions. *Id.* at 216. The subscription would automatically renew unless and until the customer cancelled. *Id.* Prior to

charging fees pursuant to the automatic renewal, Synapse would send customers an automatic renewal notice postcard. *Id.* at 217. However, this postcard contained very little information; the postcard appeared to be an offer for a new subscription rather than an automatic renewal notice. *Id.* at 218.

The plaintiffs in *McNair* filed a class action complaint on behalf of "customers of Synapse [who] were mailed a postcard advance notification of an automatic charge for an additional term or renewal of their magazine subscription(s) that failed to state that he or she is an Automatic Renewal Customer or is subject to an automatic charge." *Id.* 221-22. The *McNair* plaintiffs sought injunctive relief. *Id.* at 221. The defendant argued, however, that the plaintiffs lacked Article III standing because they had no cognizable interest in the prospective relief sought. *Id.* at 224.

The Third Circuit agreed. In particular, the Third Circuit held that the plaintiffs lacked Article III standing because there was no reasonable likelihood that the plaintiffs would be injured in the future. *Id.* at 225. Indeed, the plaintiffs were "not Synapse customers and thus [were] not . . . subject to Synapse's allegedly deceptive techniques for obtaining subscription renewals." *Id.* And, even if the plaintiffs accepted a Synapse offer in the future, "speaking generally, the law accords people the dignity of assuming that they act rationally, in light of the information they possess." *Id.* at 225. Moreover, the Third Circuit noted that:

> Because Appellants are familiar with Synapse's practices as well as the various names under which it operates, it is a speculative stretch to say they will unwittingly accept a Synapse offer in the future. But even if they did, they would only be harmed if they were again misled by Synapse's subscription renewal techniques, which would require them to ignore their past dealings with Synapse. In short, Appellants ask us to presume they will be fooled again and again. While we cannot definitively say they won't get fooled again, it can hardly be said that Appellants face a likelihood of future injury when they *might* be fooled into inadvertently accepting a magazine subscription with Synapse and *might* be fooled by its renewal tactics once they accept that offer.

*Id.* at 225 n.15.

6

Numerous courts within this district have followed the binding precedent set forth in *McNair*. Most recently, in *Tawil v. Illinois Tool Works, Inc.*, United States District Judge Freda L. Wolfson dismissed a claim for injunctive relief in a consumer fraud case. *See* No. 15-8747, 2016 WL 4260791, at *1 (D.N.J. Aug. 11, 2016). There, the defendants manufactured and distributed Rain-X for use in motor vehicles. *Id.* at *1. According to the plaintiff, when Rain-X is installed in certain vehicles, it damages the vehicles' windshield washer fluid sensors and requires repairs between $100 and $200. *Id.* The plaintiff moved for injunctive relief requiring the defendants to provide warnings. *Id.* The plaintiff argued "while he may know that, in the past, Rain-X was formulated in a manner that made it incompatible with *certain* vehicles' washer fluid sensors, *i.e.*, *his* car's windshield wiper system, in the absence of an injunction requiring Defendants to provide appropriate warnings to consumers, he has no way to know if [Rain-X] has been reformulated by Defendants to fix this compatibility problem." *Id.* at *7 (emphasis removed). Judge Wolfson characterized the question to be "whether [the plaintiff], armed with the knowledge that Rain-X (as it currently exists) is incompatible with his car's windshield wiper system, would purchase Rain-X again in the absence of warnings that the product is not compatible with his car." *Id.* Ultimately, Judge Wolfson held that, pursuant to *McNair*, "this Court must assume Plaintiff would act rationally, based on the knowledge he possesses, and would not purchase a product that he knows would damage his vehicle's windshield wiper system," thus dismissing the plaintiff's claim for injunctive relief. *Id.*

In *Robinson v. Hornell Brewing Co.*, Chief United States District Judge Jerome B. Simandle reached a similar result. *See* No. 11-2183, 2012 WL 1232188, *7 (D.N.J. Apr. 11, 2012). There, the plaintiff alleged that he was misled by labels on the defendants' Arizona Brand beverages, which claimed to include all natural ingredients. *Id.* at *1. The plaintiff brought a

7

class-action claim under the New Jersey Consumer Fraud Act seeking injunctive relief. *Id.* However, Judge Simandle concluded that the plaintiff lacked Article III standing to pursue such injunctive relief. *Id.* at *7. Despite the fact that the plaintiff testified that he had no intention of purchasing the product again, he claimed that he was exposed to the threat of future injury every time he stepped into a convenience store. *Id.* at *6. Relying on *McNair*, Judge Simandle held that the plaintiff "can control the risk of injury by merely refraining from buying the Arizona beverage." *Id.*

> In concluding, however, Judge Simandle noted that:
>
> as a result of the controlling precedent in this area, class action plaintiffs pursuing injunctive relief to prevent consumer fraud may, in general, have a difficult time satisfying the demands of Article III standing. By necessity, such cases can involve only identified plaintiffs who have become aware of the misleading nature of the label. Under the logic of *McNair*, such individual plaintiffs are therefore unable to plausibly claim a likelihood of being "injured" (*i.e.*, misled) by the label again in the future. *This conclusion would seem to prevent any Rule 23(b)(2) class action pursuing injunctive relief* against consumer fraud based on mislabeling in federal court . . . . While this Court's holding is controlled by the clear precedent of *McNair* on this point, it is to be hoped that future Third Circuit opinions will clarify whether this is the intended result of the *McNair* holding.

*Id.* at *7 (emphasis added).

In the instant case, Plaintiff echoes Judge Simandle's concerns. Indeed, Plaintiff argues that accepting Defendant's argument "would make federal courts powerless to enjoin false advertising at least when a duped consumer points it out." (Pl. Supp. Br. at 4-5 (citing *Weidenhamer v. Expedia, Inc.*, No. 14-1239, 2015 WL 1292978, at *5 (W.D. Wash. Mar. 23, 2015))). According to Plaintiff, granting Defendant's motion "is directly contrary to fundamental principles of federalism and comity, which direct federal courts sitting in diversity to 'adjudicate state-created rights in a manner that closely resembles the way in which a state court would adjudicate that same right.'" (*Id.* at 5 (citing *In re Cty. Of Orange*, 784 F.3d 520, 531 (9th Cir.

8

2015))).  But, Plaintiff concedes that there is no public policy exception to Article III, and that principles of federalism and comity do not trump Article III standing.  (*Id.*).

Much like *Tawil* and *Robinson*, the Court concludes that the binding precedent of *McNair* is controlling on this issue, and holds that Plaintiff fails to establish Article III standing.  Plaintiff claims that he intends on purchasing another laptop computer, but, without an injunction, he "has no way of knowing whether the USB 3.0 representation on Defendant's other products is truthful or not."  (Pl. Opp. Br. at 10).  As in *Tawil*—where the plaintiff claimed that he had no way of knowing whether the Rain-X was reformulated absent an injunction—Plaintiff here is familiar with Defendant's alleged misrepresentations.  *See Tawil*, 2016 WL 4260791, at *7.  It would be a "speculative stretch" for Plaintiff to say that he would again be misled by Defendant's misrepresentations.  *See McNair*, 672 F.3d at 225 n.15.  In order for Plaintiff to be misled, he would have to ignore his past dealings with Defendant and its products.  *See id.*  As Judge Simandle stated in *Robinson*, Plaintiff can manage the risk of injury by not purchasing Defendant's products. *See Robinson*, 2012 WL 1232188, at *6.  Although Plaintiff alleges that he intends to purchase another laptop from Defendants, the Court must assume that Plaintiff will act rationally in light of the information he possesses.  *See McNair*, 672 F.3d at 225; *see also Tawil*, 2016 WL 4260791, at * 7 ("As in *McNair*, this Court must assume Plaintiff would act rationally, based on the knowledge he possesses, and would not purchase a product that he knows would damage his vehicle's windshield wiper system.").

Moreover, Plaintiff's argument that the threatened invasion of a statutorily-conferred right provides the requisite injury for Article III standing is unavailing.  Indeed, even if Plaintiff's statutorily-conferred right to receive truthful information from sellers about their products

9

constituted injury, Plaintiff must still establish that he is likely to suffer *future* injury—which *McNair* appears to place doubt on.

Simply put, the holding in *McNair* appears to dictate that Plaintiff cannot establish he is likely to suffer future injury from Defendant's alleged conduct. *See Robinson*, 2012 WL 1232188 at *7 ("This [*McNair*] conclusion would seem to prevent *any Rule 23(b)(2) class action pursuing injunctive relief* against consumer fraud based on mislabeling in federal court . . . ." (emphasis added)). As such, the Court grants Defendant's motion to dismiss Count Four of the Second Amended Complaint for Plaintiff's failure to establish Article III standing.[1]

Nevertheless, this dismissal will be without prejudice to Plaintiff asserting his claim for injunctive relief in the proper state court. Indeed, as Plaintiff contends, Article III standing is a matter of jurisdiction. (Pl. Supp. Br. at 6 n.3). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006). Dismissals for lack of subject matter jurisdiction are without prejudice to the plaintiff asserting the dismissed claims in state court. *See Levin v. Lillien*, 511 F. App'x 149, 150 (3d Cir. 2013) (citing *South Austin Coal. Cmty. Council v. SBC Commc'ns Inc.*, 191 F.3d 842, 844 (7th Cir. 1999) ("*[E]very* jurisdictional dismissal is without prejudice to litigation of the merits in some other court or at some other time."). Although the Court grants Defendant's motion to dismiss, Plaintiff is free to litigate the dismissed claim in the appropriate forum. And, even if the Court were to grant Defendant's motion with prejudice, Plaintiff would still be free to pursue the dismissed claim in state court. *See Levin,* 511 F. App'x at 150 ("However, although the District Court's order provides for a dismissal with prejudice, there is no question in this case that, as a matter of law, the District Court's decision has

---

[1] Given that the Court dismisses Count Four of Plaintiff's Second Amended Complaint, it need not address Defendant's alternative arguments to dismiss Counts One through Three.

no preclusive effect, other than on the merits of its jurisdictional ruling."). Therefore, it would appear that the Court cannot preclude Plaintiff from asserting his dismissed claim for injunctive relief in the proper forum.

## IV.    CONCLUSION

For the above reasons, the Court grants Defendant's motion to dismiss without prejudice to Plaintiff asserting the dismissed Count Four in the proper forum. An appropriate Order accompanies this Opinion.

>                             */s/ Esther Salas*
>                             **Esther Salas, U.S.D.J.**